**UNITED STATES of America**

v.

**Stan DAVIS.**

**Criminal No. L–95–164.**

United States District Court,
S.D. Texas,
Laredo Division.

Dec. 11, 1995.

Roger C. Rocha, Laredo, TX, Stan NMI Davis, Hebbronville, TX, for defendant.

Francis Xavier McIlvaine, U.S. Attorney's Office, Laredo, TX, for U.S.

### MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending is Defendant Stan Davis' "Motion to Suppress Oral Statements Allegedly Made by Defendant." (Docket n. 154). Defendant claims that oral statements given to law enforcement officers after his arrest were the product of duress and coercion and should therefore be suppressed. A hearing was held on the motion on November 9, 1995. On November 27, 1995, the government filed a Response in Opposition to Defendant's Motion to Suppress. (Docket n. 215).

### BACKGROUND

In the November 9, 1995 hearing, the government called two witnesses, DEA Task Force Agent Michael Wu ("Wu") and DEA Task Force Agent Joseph Canales ("Canales"). The Defendant also testified.

On August 8, 1995, Defendant was indicted in the present case. On the basis of this indictment, Wu contacted the Jim Hogg County's Sheriff's office for assistance in finding and arresting Defendant. At approximately 11:15 a.m. on August 10, 1995, Defendant was picked up by Jim Hogg County Sheriff's Deputy Orlando Garza. Garza called Wu at approximately 12:00 p.m. to inform him that Defendant was in custody.

Wu and Canales then travelled to the Sheriff's office in Hebronville from Laredo to pick up Defendant. Upon arrival, Canales read Defendant his *Miranda* rights, frisked and handcuffed the Defendant, and put him in the backseat of Wu's extended cab pick-up truck. Wu then fastened the seatbelt around the Defendant and the three men started for Laredo. Defendant testified that he was extremely paranoid at this time because he was high on cocaine, having consumed one-half of

a gram of cocaine on the morning he was arrested and more the previous night.

During the forty-five minute ride from Hebronville to Laredo Defendant talked with Wu and Canales. Wu explained to Defendant that he had been indicted on marijuana conspiracy charges and also identified the other defendants charged in the case. Defendant asked if the other defendants had cooperated with law enforcement, and in particular if co-defendant Garza had cooperated. Wu and Canales told Defendant that they could not reveal if any other co-defendant was in fact cooperating. Wu asked the Defendant about the possible involvement of the Defendant's wife in a couple of the marijuana transactions. Wu testified that a confidential informant had told him that Defendant's wife had accompanied Defendant on some of the marijuana deals. The questions about Defendant's wife were intended to see if she would be able to corroborate the Defendant's testimony or if she actually was the person seen by the C.I. in the company of Defendant during various deals. Wu testified that he did not indicate to the Defendant that the government was interested in arresting the wife. Defendant did not respond to the questioning regarding his wife. Defendant testified that because of his cocaine-induced paranoia, he thought the police would arrest his wife if he did not cooperate or agree with Wu. Wu also informed Defendant that the government had forfeited certain property belonging to another defendant in this case but did not tell Defendant that he would have any property forfeited.

After arriving in Laredo, the Defendant was taken to the DEA office. There, after booking the Defendant, Wu read the *Miranda* rights again and asked if the Defendant wanted to make a statement. Defendant then asked what would happen if he chose to cooperate. Wu explained that any cooperation would be made known to the federal prosecutor handling the case and eventually to the court. No promises were made but instead Wu and Canales told Defendant that if he cooperated, he would receive "considerations towards sentencing," meaning that the court could choose to give a more lenient sentence. Wu also told Defen-

dant that he would do all he could with regard to Defendant's bond situation, whether or not Defendant cooperated. Wu testified that he did not, however, tell the Defendant that if he cooperated he would be out on bond, but just that he would not recommend a high bond to pre-trial services. Wu described his conversations with Defendant as amicable and he felt that Defendant, being a U.S. citizen with a job and family, would pose little risk of flight. Defendant chose to give a statement, which was not recorded. The next day, Wu reduced the statement to writing in a DEA 6 form. Defendant never invoked his right to counsel nor did he ever request that the interview end.

## ANALYSIS

Defendant alleges that his oral statements were the product of coercive tactics of Agents Wu and Canales and should therefore be suppressed. Defendant claims that as leverage for cooperation the agents: (1) promised Defendant lenient treatment during sentencing; (2) promised to secure Defendant a favorable release bond; and (3) implicitly threatened to arrest Defendant's wife. The government asserts that the agents' conduct was lawful and that Defendant's statements were made knowingly and voluntarily.

▇▇ First, the Court agrees with the government that the conversations regarding the bond and possible "considerations towards sentencing" were lawful and did not render Defendant's statement's involuntary nor impair his capacity for self-determination. *Culombe v. Connecticut,* 367 U.S. 568, 602–03, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961). The record indicates that these statements were made in response to Defendant's own inquiries about what would happen if he chose to cooperate. Agent Wu replied that any cooperation would be made known to the U.S. Attorney's office and that the Court could then, in its discretion, impose a more lenient sentence. Such statements do not render a confession involuntary. *United States v. Nash,* 910 F.2d 749, 752–53 (11th Cir.1990). The same is true for the conversations concerning the bond. The more credible testimony of Wu and Canales shows

that there was no *quid pro quo* arrangement or otherwise coercive conduct. Merely encouraging cooperation with the government and informing a defendant of realistic penalties for his cooperation and/or noncooperation does not offer an illegal inducement. *Id., United States v. Mendoza–Cecelia*, 963 F.2d 1467, 1475 (11th Cir.), *cert. denied*, 506 U.S. 964, 113 S.Ct. 436, 121 L.Ed.2d 356 (1992). What renders a confession involuntary is not *any* threat or promise, but rather a threat or promise of illegitimate action. *United States v. Kolodziej*, 706 F.2d 590, 594 (5th Cir.1983). No such threats were made in this case.

■ Likewise, Agent Wu's questions concerning Defendant's wife did not constitute coercive conduct rendering the confession involuntary. Defendant does not claim that Agent Wu made any explicit threats to arrest Defendant's wife nor does the evidence indicate that any implicit threats were made. Defendant did not respond to the questions about his wife at the time but now claims that, due to his cocaine-induced paranoia, he believed the agents would have arrested his wife had he not cooperated. The evidence does not support Defendant's assertions. First, even assuming Agent Wu suggested that Defendant's wife would be arrested on the basis of the information relayed by the C.I., Defendant's desire to extricate his wife from a possible good-faith arrest would not render his confession involuntary. *Allen v. McCotter*, 804 F.2d 1362, 1364 (5th Cir.1986). Second, Defendant's claims of cocaine-induced paranoia are highly dubious in light of Defendant's testimony that he remembered precisely what the agents had told him during the incident and the overall testimony concerning Defendant's demeanor. Moreover, even if Defendant had been using cocaine, his confession would not be rendered involuntary absent any evidence of police coercion. *Colorado v. Connelly*, 479 U.S. 157, 167–72, 107 S.Ct. 515, 522–24, 93 L.Ed.2d 473 (1986) (focus is on presence or absence of police coercion); *United States v. Raymer*, 876 F.2d 383, 386–87 (5th Cir.) (absent police coercion, confession not involuntary despite hospitalization, prescription pain reliever, and limited education), *cert. denied*, 493 U.S. 870, 110 S.Ct. 198, 107 L.Ed.2d 152

(1989). There being no coercion in this case, the Defendant's claims are without merit.

Accordingly, Defendant's Motion to Suppress is DENIED.