**UNITED STATES of America**

v.

**Brad STEWART**

**No. CRIM.A.04–65.**

United States District Court,
E.D. Louisiana.

June 21, 2004.

Virginia Laughlin Schlueter, Federal Public Defender, Lindsay A. Larson, III,

King, LeBlanc & Bland, LLP, Charles Gary Wainwright, Law Offices of Charles Gary Wainwright, New Orleans, LA, for Brad Stewart (1) aka Brad J Stewart, defendant.

Charles Gary Wainwright, Law Offices of Charles Gary Wainwright, New Orleans, LA, for C Gary Wainwright (2), former counsel for Brad Stewart, movant.

Nils R. Kessler, U.S. Attorney's Office, New Orleans, LA, for U.S. Attorneys.

### ORDER AND REASONS

LEMMON, District Judge.

**IT IS HEREBY ORDERED:**

1) Defendant Brad Stewart's Motion to Suppress Confession (Document 9) is **DENIED.**

2) Stewart's Motion to Reveal Confidential Informant (Document 10) is **DENIED.**

3) Stewart's Motion to Suppress Physical Evidence (Document 11) is **DENIED.**

### A. Background.

In February 2004, a confidential informant told New Orleans Police Detective Alan Arcana that an individual had been distributing crack cocaine from a residence at 3048 North Rocheblave. The police obtained a search warrant for 3048 North Rocheblave, and executed it on March 4, 2004. Police officers detained Stewart, the target of their investigation, near 3048 North Rocheblave just prior to searching the residence, and later found a quantity of crack cocaine inside the front panel of a dryer at the residence. Police officers proceeded to 8546 Grant Street, which was the residence of Stewart's sometime girlfriend, Danielle Lindsey. At 8546 Grant Street, they found more crack cocaine and

a stolen Llama pistol in a closet in Lindsey's bedroom.

The government alleges that Stewart made several incriminating statements on March 4, 2004, including (1) informing Detective Arcana outside of Lindsey's residence that there was a "hot" pistol inside, (2) telling Special Agents Tony Pierce and Sean Trimber of the Bureau of Alcohol, Tobacco, and Firearms that they could "put" the charges on him, and (3) giving a written confession in connection with the stolen pistol to Pierce and Trimber, but refusing to sign the confession after it had been written out.

On March 11, 2004, the government indicted Stewart, charging him with one count of possession with intent to distribute 50 grams or more of cocaine base, one count of being a felon in possession of a firearm, and one count of knowing possession of a stolen firearm. Stewart has moved to suppress his confession, to reveal the identity of the confidential informant, and to suppress the physical evidence found at 3048 North Rocheblave and 8546 Grant Street. On May 26 and 28, 2004, the court conducted an evidentiary hearing into Stewart's motions.

### B. Analysis.

#### 1. Motion to Suppress Confession.

Stewart argues that the statements he allegedly made to the government on March 4, 2004 should be suppressed. He argues (1) that the statement to Officer Arcana about the "hot" pistol was obtained without giving him the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and (2) that his comment to Special Agents Pierce and Trimber that they should "put" the charges on him, as well as the verbal adoption of the written statement about the stolen pistol, were not voluntary because they were obtained after officers threatened to arrest members of his family and Lindsey.[1]

---

1. Stewart's motion also argued that his later    statement about the stolen pistol should be

### a. Statement to Officer Arcana concerning the "hot" pistol.

*Miranda* held that a defendant's statements made during custodial interrogation may not be used by the prosecution unless the defendant is warned that he has a right to remain silent, that any statement he makes may be used against him, and that he has the right to an attorney. *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. Stewart argues that his alleged statement to Officer Arcana outside Lindsey's residence that there was a "hot" pistol inside should be suppressed because he had not been given any *Miranda* warnings at the time it was made, and testified at the suppression hearing that officers did not provide any *Miranda* warnings when he was detained. Officer Arcana testified that when police officers first arrived at 3048 North Rocheblave to execute the warrant, Detective Dennis Bush gave Stewart his *Miranda* warnings, and Officer Arcana observed Stewart nod and said "okay." Additionally, New Orleans Police Detective Andrew Rocceforte testified that he personally advised Stewart of his *Miranda* rights when he arrived at 3048 North Rocheblave, and that Stewart indicated he understood them. The court accepts the testimony of Arcana and Rocceforte, and finds that Stewart's statement about the "hot" pistol was advised of his *Miranda* rights and is admissible.

### b. (1) Admission to Special agents Pierce and Trimber regarding "putting the charges" on him, and (2) statements regarding the stolen pistol.

■ At the suppression hearing, Stewart testified that unidentified government officers informed him that unless he confessed that the crack cocaine and stolen pistol were his, officers would arrest "everybody" and take them to jail, including his mother and Lindsey. He also testified that officers threatened that his child would be born in jail (Lindsey was visibly pregnant on March 4, 2004). In response to these threats, Stewart testified that he informed officers that because they had targeted him in the investigation, they should "put" the charges on him and not his family members. Stewart testified that Special Agent Pierce then prepared Exhibit G–3/T–4, which is an unsigned affidavit stating:

> On March 4, 2004 New Orleans Police Officers did a warrant at my moms's house at 3048 North Rocheblave St. We went to 8546 Grant Street where I stay with my girlfriend and Dana Lindsey. When we got to the house, I told the officers there was a .45 caliber pistol in the house. I had bought the gun from a guy on the street about 9 months ago for my protection. The gun did not belong to anyone else inside the house. Agent Peirce wrote this statement for me at my request based on the information I had given him.

Special Agent Trimber testified that Stewart informed him and Special Agent Pierce that he had purchased the pistol on the street nine months before, and knew it was stolen because only stolen pistols are sold in that manner. Special Agent Trimber recalled that Stewart told him he was confessing to the stolen pistol charge to prevent his mother and sister from going to jail. Trimber testified that Stewart read over the statement prepared by Spe-

suppressed because it was obtained without giving him his *Miranda* warnings. At the suppression hearing the government introduced as Exhibit G–2/T–3 a "Waiver of Right to Remain Silent and of Right to Advice of Counsel" form, which informed Stewart of his *Miranda* rights and concluded with the statement: "I hereby voluntarily and intentionally waive my rights, and I am willing to make a statement and answer questions." Stewart admitted at the suppression hearing that he signed the form.

706

cial Agent Pierce and affirmed that everything in it was true, but said he did not want to sign it. Stewart testified that he told Trimber and Pierce that the facts in the statement were *not* true.

In *United States v. Bell,* 367 F.3d 452 (5th Cir.2004), the Fifth Circuit summarized the standards for the admissibility of a defendant's confession:

When a defendant challenges the voluntariness of a confession, the government must prove its voluntariness by a preponderance of the evidence in order for the confession to be admissible as substantive evidence at the defendant's criminal trial.

"A confession is voluntary if, under the totality of the circumstances, the statement is the product of the accused's free and rational choice." In order for the defendant to establish that his confession was involuntary, he must demonstrate that it resulted from coercive police conduct and that there was a link between the coercive conduct of the police and his confession.

*Id.* at 461. Admissibility of defendant's statement is subject to the same standards.

Stewart argues that his statements were not voluntary because they were obtained as the result of threats to arrest Lindsey and members of his family. In *Allen v. McCotter,* 804 F.2d 1362 (5th Cir.1986), the Fifth Circuit examined whether a confession is voluntary in light of arrest threats against a defendant's family members. The *Allen* defendant's wife had driven him to a bar where he was going to sell a shotgun. The prospective purchaser did not arrive, and defendant robbed the bar at gunpoint. During his post-arrest interrogation, a police detective told defendant that because his wife was "directly involved" in the robbery, charges could be filed against her; however, if defendant confessed, the detective told him that the

police would not file charges against his wife. Defendant confessed. The Fifth Circuit held that his confession was voluntary and would not be suppressed:

Petitioner next argues that his confession should have been excluded as involuntary. Petitioner insists that his wife was not involved in the robbery and that his confession was therefore impermissibly induced by Detective Payne's threat to "file" on her. We disagree. Petitioner concedes in his reply brief that his wife drove him to the bar where the robbery took place. It is undisputed that petitioner's wife drove petitioner to the bar where he removed a shotgun from the trunk of the automobile and entered the bar. Based on these objective facts known by Detective Payne at the time of the interrogation, Detective Payne had probable cause to arrest the petitioner's wife for aiding in the commission of the robbery. The petitioner's confession was therefore not involuntary by reason of his desire to extricate his wife from a possible good faith arrest.

*Id.* at 1364; *see also United States v. Davis,* 912 F.Supp. 245, 248 (S.D.Tex.1995) ("[E]ven assuming Agent Wu suggested that Defendant's wife would be arrested on the basis of the information relayed by the [confidential informant], Defendant's desire to extricate his wife from a possible good-faith arrest would not render his confession involuntary."); *United States v. Contreras–Del Toro,* 892 F.Supp. 159, 160 (S.D.Tex.1995) ("A confession motivated by desire to extricate a friend or relative from a possible good-faith arrest is not involuntary. What renders a confession involuntary is not any threat or promise, but rather a threat or promise of illegitimate action.") (citation omitted), *aff'd,* 129 F.3d 612 (5th Cir.1997) (table). *Allen* relied upon two prior cases that had involved allegations that guilty pleas had been motivated by threats against defendants' family members. In the Fifth Circuit, such

threats when made by prosecutors cannot be motivated by bad faith:

> Recognizing ... that threats to prosecute third persons can carry leverage wholly unrelated to the validity of the underlying charge, we think that prosecutors who choose to use that technique must observe a high standards of good faith. Indeed, absent probable cause to believe that the third person has committed a crime, offering "concessions" as to him or her constitutes a species of fraud. At a minimum, we think that prosecutors may not induce guilty pleas by means of threats which, if carried out, would warrant ethical censure.

*United States v. Nuckols,* 606 F.2d 566, 569 (5th Cir.1979).

It is undisputed that crack cocaine was found at Stewart's mother's home, and that crack cocaine and a stolen pistol were recovered from Lindsey's bedroom closet. Police officers could have charged Lindsey and Stewart's mother with narcotics possession. Any threat to arrest Lindsey and Stewart's family members if Stewart did not confess would therefore have been in good faith.[2] Stewart's desire to extricate them from the consequences of a good faith arrest does not render his statements involuntary.

**2. Motion to Reveal Confidential Informant.**

In *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court held that courts considering whether to order the disclosure of the identity of a confidential informant must examine "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62, 77 S.Ct. 623. In interpreting *Roviaro,* the Fifth Circuit has directed courts to focus on three issues: (1) "whether the informant participated in the criminal activity," (2) "the relationship between the defendant's asserted defense and the probable testimony of the informant," and (3) "the government's interest in non-disclosure." *United States v. Cooper,* 949 F.2d 737, 749 (5th Cir.1991), *cert. denied,* 504 U.S. 975, 112 S.Ct. 2945, 119 L.Ed.2d 569 (1992). In this case, the confidential informant did not participate in the crimes with which Stewart is charged. The informant purchased crack cocaine in a controlled buy on February 22, 2004 from an individual at 3048 North Rocheblave, but Stewart is not charged with that crime. Although the informant also provided the tip that crack cocaine could be found inside the residence at 3048 North Rocheblave, the Fifth Circuit has held "in countless cases" that *"Roviaro* does not require the disclosure of the identities of 'mere tipsters.'" *Cooper,* 949 F.2d at 749. The identity of the confidential informant does not provide Stewart with any information relevant to his defense.

Stewart suspects that the confidential informant may be his cousin, Corey Stewart. Although Stewart alleges that Corey Stewart had the opportunity to plant the drugs because he had free access to the house, that is no reason to require the government to reveal the identity of the confidential informant. Stewart may if he wishes present this argument at the time of trial as a part of his defense. The court denies Stewart's motion to reveal the identity of the confidential informant.[3]

---

**2.** Although Stewart did not identify the police officer(s) who allegedly made these threats, Special Agent Trimber, Detective Arcana, and Detective Rocceforte each denied making any such threats or overhearing other officers making them.

**3.** Although the government presented no evidence supporting its interest in nondisclosure, the Fifth Circuit has noted that it "is not required to examine the third prong when the defendant has failed to produce evidence which supports the first two prongs." *United States v. Sanchez,* 988 F.2d 1384, 1392 (5th

### 3. Motion to Suppress Physical Evidence.

#### a. Evidence obtained at 3048 North Rocheblave.

Stewart argues that the evidence obtained at 3048 North Rocheblave should be suppressed because (1) the warrant to search 3048 North Rocheblave Street was not executed in a timely manner after it was issued, and (2) no inventory of items seized was left at 3048 North Rocheblave.

■ Stewart contends that the failure to execute the warrant timely and to leave an inventory violated Rule 41 of the Federal Rules of Criminal Procedure. In *United States v. McKeever*, 905 F.2d 829 (1990) (en banc), the Fifth Circuit held that Rule 41 "only applies to warrants issued 'upon the request of a federal law enforcement officer or an attorney for the government,'" and noted that "the 1972 amendment to Rule 41 reflects a Congressional intent that none of Rule 41's requirements apply to state warrants." *Id.* at 832–33; *United States v. Rivas*, 99 F.3d 170, 176 (5th Cir.1996), *cert. denied*, 520 U.S. 1149, 117 S.Ct. 1326, 137 L.Ed.2d 487 (1997). Consequently, Louisiana state law, not Rule 41, governs the warrant to search 3048 North Rocheblave.

Article 163 of the Louisiana Code of Criminal Procedure provides that "[a] search warrant cannot be lawfully executed after the expiration of the tenth day after its issuance." Additionally, in *State v. Ginorio*, 619 So.2d 790 (La.App. 4th Cir.), *writ denied*, 625 So.2d 1039 (La. 1993), the court held that staleness affects a warrant only if the passage of time makes it doubtful the object sought in the warrant will still be at its location:

The passage of time may adversely affect the validity of a search warrant. Thus, included in the general concept of probable cause, is the necessary element of a reasonable belief that the contraband or evidence will not have been disposed of but will remain at the place to be searched at the time of the proposed search. However, the passage of a few days between observation of probable criminal activity and the execution of a search warrant will not necessarily invalidate the warrant. Staleness is not an issue unless time passage makes it doubtful that the object sought in the warrant will still be in a place where it was observed.

*Id.* at 793 (citations omitted); *State v. McLeod*, 843 So.2d 1268, 1277 (La.App. 3d Cir.2003) (citing *Ginorio* and holding that brief delay in executing search warrant was acceptable because police officers had a reasonable belief that the contraband remained at the premises to be searched). The record reflects that the warrant to search 3048 North Rocheblave Street was issued by Commissioner Marie A. Bookman on February 25, 2004 at the request of Detective Arcana,[4] and directed officers to "search forthwith" the premises. The warrant was executed eight days later, within the ten-day period specified in Article 163. Detective Arcana testified that the eight-day delay was due solely to the fact that there were a large number of search warrants that had to be executed at that time. The warrant was based on the fact that an individual was "frequently" selling crack cocaine from the residence. The court finds that the eight-day delay in executing the warrant does not furnish grounds to suppress the evidence discovered.[5]

Cir.1993), *cert. denied*, 510 U.S. 878, 114 S.Ct. 217, 126 L.Ed.2d 173 (1993).

**4.** The date on the warrant actually reads February 25, *2003*. This appears to be a typographical error.

**5.** The Fifth Circuit has interpreted the term "forthwith" in connection with the prior version of Fed. R.Crim. Proc. 41. Prior to its amendment, Rule 41 provided that a federal search warrant "shall command the officer to

With regard to the failure of the police officers to leave a receipt at 3048 North Rocheblave, Article 166 of the Louisiana Code of Criminal Procedure requires that "[w]hen a peace officer seizes property under a warrant he shall give a receipt to the person from whom the property is taken, describing the property in detail. In the absence of such person, the peace officer shall leave the receipt in the place where the property was seized." However, Article 166 "does not provide any constitutional protections," and courts have held that "the lack of such a receipt does not provide a basis for the suppression of evidence seized." *State v. Stewart,* 465 So.2d 206, 210 (La.App. 3d Cir.), *writ denied,* 468 So.2d 571 (La.1985); *State v. Shannon,* 472 So.2d 286, 291 n. 1 (La.App. 1st Cir.), *writ denied,* 476 So.2d 349 (La. 1985). The court finds that the failure to leave a receipt at 3048 North Rocheblave does not mandate the suppression of the evidence discovered at that location.

### b. Evidence obtained at 8546 Grant Street.

■ Stewart argues that the search of 8546 Grant Street was unconstitutional because police officers did not have a search warrant for the premises, violated the knock-and-announce rule when they entered 8546 Grant Street, and conducted a nonconsensual search.

The evidence introduced at the suppression hearing demonstrated that police officers entered 8546 Grant Street using a key they obtained from Stewart's person when he was detained. Inside the residence, they found Dana Lindsey, the 32–year old sister of Danielle Lindsey and a resident of the home, asleep in her bedroom. Dana testified that she was completely asleep, and would not have heard any knock on her door. The police officers "kicked the bedroom door in," and entered her room. Dana saw three men, one in plain clothes and two in fatigues. At least one had his pistol in his hand. The officers told Dana to put her hands up, and asked if she had any drugs in the house. She denied knowledge of any drugs. Dana stated that she realized the men were police officers, and was relieved because she initially thought they may be there to rob her.

Dana testified that after she dressed, she emerged from her bedroom and observed approximately seven to ten officers in the residence. The plain clothes officer again asked her if there were any drugs or weapons in the house, and she indicated that there were none. The officer then asked her if she would be willing to consent to a search of her home, and she said officers could do so, and that she wanted those things out of her home if they found any. Dana testified that officers did not threaten her, and specifically indicated that "I think I had a choice" to consent to the search. Dana then executed a "New Orleans Police Department Consent to Search" form, Exhibit G–1/T–1, authorizing in writing the search of the residence. She testified that she signed the form of her own free will, and knew that she could have refused if she had wanted to do so.

search forthwith the person or place named for the property specified," and additionally required that a warrant "be executed and returned only within 10 days after its date." In *United States v. Bradley,* 428 F.2d 1013 (5th Cir.1970), the court held that the term "forthwith" in the prior version of Rule 41 "usually requires search and seizure in less" than ten days, but because the term was "deliberately undefined," it required a case-by- case determination of reasonableness. *Id.* at 1015–16. The court further held that even if the warrant was not executed forthwith, "evidence should be excluded only if the delay resulted in legal prejudice to the complaining party." *Id.* at 1016. Stewart presents no reason why the eight-day delay was unreasonable under the circumstances, nor does he point to any prejudice he sustained as a result of its execution.

The next day, police officers returned to her residence and asked her to sign a form indicating that the drugs and pistol found at the residence were not hers, and that she was not aware that these items were located at the residence. Dana testified that she voluntarily signed the form (Exhibit G–4/T–5).

In *United States v. Kelley*, 981 F.2d 1464 (5th Cir.), *cert. denied*, 508 U.S. 944, 113 S.Ct. 2427, 124 L.Ed.2d 647 (1993), the Fifth Circuit held that "voluntary consent can validate a search even when the consent to search is preceded by a Fourth Amendment violation." *Id.* at 1470. The court also analyzed the standards to use in determining the voluntariness of consent:

> "To be valid, consent to search must be free and voluntary." The government has the burden of proving, by a preponderance of the evidence, that the consent was voluntary. Where consent is preceded by a Fourth Amendment violation, the government has a heavier burden of proving consent. The voluntariness of consent is "a question of fact to be determined from the totality of all the circumstances."

In evaluating the voluntariness of consent, we have considered six factors:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

All six factors are relevant, but no single one is dispositive or controlling.

*Id.* at 1470. The court finds that even if the police conduct in entering 8546 Grant Street was in violation of the Fourth Amendment, Dana Lindsey's subsequent voluntary consent validated the search of the residence. At no time was Dana handcuffed or placed in custody. There is no evidence police officers coerced her into consenting to the search. Dana completely cooperated with police officers in their investigation. Dana testified that she was not threatened, and was aware she could refuse consent. Based on her trial testimony, Dana appeared to be of average intelligence and education. Her signed statement on March 5, 2004 indicates that she was not aware that the pistol and drugs were in the residence, and she was desirous to have the contraband removed from her home. Considering all of the relevant factors identified in *Kelley*, the court concludes that Dana's consent to search 8546 was voluntary, and the search was therefore valid.

### C. Conclusion.

Stewart's Motion to Suppress Confession, Motion to Reveal Confidential Informant, and Motion to Suppress Physical Evidence are denied.