NO. 07-07-0266-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



DECEMBER 21, 2009


______________________________



JAIME TREVINO, JR., APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 379TH DISTRICT COURT OF BEXAR COUNTY;



NO. 2004CR6365; HONORABLE BERT RICHARDSON, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

MEMORANDUM OPINION


 Appellant Jaime Trevino, Jr. appeals from his sentence of ten years confinement
pursuant to a plea agreement, presenting six points of error. We affirm.

Background

 In September 2004, appellant plead guilty to the felony offense of evading detention
in a vehicle. (1) His plea agreement with the State included provisions requiring him to testify
in the State's prosecution of two other defendants, and stated his sentencing would be
postponed until their trials were completed. (2) At the September 2004 hearing, the trial court
accepted appellant's guilty plea but did not adjudicate him guilty. Thereafter, at a
sentencing hearing in May 2007, the State informed the trial court that appellant had
violated the terms of the plea agreement by committing additional offenses after he entered
his guilty plea, thus making him an unsatisfactory witness in the cases in which he had
agreed to testify. The court adjudicated appellant guilty in accordance with his earlier plea,
found he had violated the terms of the September 2004 plea agreement and, relying on
the plea agreement, (3) assessed punishment at ten years confinement in the Institutional
Division of the Texas Department of Criminal Justice. 

 Appellant timely appealed. We later abated the appeal and remanded the case to
the trial court, asking it to resolve what we saw as ambiguity in the appellate record and
issue a corrected certification of appellant's right to appeal. On remand, the trial court
conducted a hearing and re-certified appellant's right of appeal. 

Analysis

 By his first two points of error, appellant contends the trial court erred in failing to
allow him to withdraw his guilty plea at the May 2007 hearing and instead sentencing
appellant to ten years confinement. In appellant's remaining four points of error, he argues
that this Court lacks jurisdiction to consider his appeal. We begin with appellant's
challenge to our jurisdiction.

Jurisdiction

 Appellant was convicted by the 379th Judicial District Court of Bexar County. He
timely filed notice of appeal to the Fourth Court of Appeals, whose district includes Bexar
County. See Tex. Gov't Code Ann. § 22.201(e) (Vernon 2004 & Supp. 2007). The appeal
later was transferred to this court by the Supreme Court of Texas under the authority given
it in chapter 73 of the Government Code. (4) Tex. Gov't Code Ann. § 73.001, et seq. (Vernon
2005). (5) Appellant's third, fourth, fifth and sixth points of error challenge the validity of the
transfer. He contends the transfer was void because it violated provisions of both the
United States and Texas Constitutions, and did not give this court jurisdiction over his
appeal. 


 We have previously addressed the same jurisdictional contentions appellant makes
here. Simmons v. State, No. 07-07-0282-CR, 2009 WL 2341921 (Tex.App.-Amarillo, July
30, 2009, pet. ref'd) (mem. op., not designated for publication). As in Simmons, the record
here reflects that appellant was notified of the transfer of his appeal from the Fourth Court
to this court. So, for the same reasons we discussed in Simmons, we find his third through
sixth points of error have not been preserved for our review. See Simmons, 2009 WL
2341921 at *2. And if we are incorrect and his contentions have been preserved for our
review, we must reject them on their merits, for the same reasons we rejected the same
contentions in Simmons. Id. at *2-*3. We overrule appellant's points of error three through
six, and find we have jurisdiction of his appeal.

Withdrawal of Guilty Plea and Imposition of Sentence

 In appellant's first point of error, he contends the trial court erred when it failed to
allow appellant the opportunity to withdraw his plea because the court never accepted the
plea agreement. The State responds that appellant's first point of error presents nothing
for review because the argument made was not presented to the trial court. We agree with
the State.

 Plea agreements are generally contractual arrangements between the State and
defendant. State v. Moore, 240 S.W.3d 248, 251 (Tex.Crim.App. 2007). A plea
agreement's contractual nature does not become binding, however, until the trial court
accepts the proffered agreement. Id. See also Ortiz v. State, 933 S.W.2d 102, 104
(Tex.Crim.App. 1996); Ex parte Williams, 637 S.W.2d 943, 947 (Tex.Crim.App. 1982)
(contract not operative until the court announces it will be bound by plea bargain
agreement); Hatley v. State, 206 S.W.3d 710, 718 (Tex.App.-Texarkana 2006, no pet.)
(once negotiated plea agreement is formally accepted by trial court, binding contractual
relationship exists between State and defendant). 

 Neither at the September 2004 plea hearing nor the May 2007 sentencing hearing
did appellant assert the court had never announced its acceptance of the plea bargain
agreement. At the sentencing hearing, appellant argued he had not breached the
agreement by committing additional offenses before being called to testify in the other
defendants' trials. (6) There was no suggestion the plea agreement was not binding because
the court had not accepted it. Arguments made on appeal must comport with those made
at trial. See Lanum v. State, 952 S.W.2d 36, 40 (Tex.App.-San Antonio 1997, no pet.). 

 Moreover, even had the point of error been preserved, we could not agree with
appellant's contention. The signed plea bargain agreement was received into evidence at
the plea hearing in September 2004, and appears in the appellate record along with other
plea papers signed at that time, including written admonishments and appellant's written
waivers of rights and judicial confession. Cf. Dorsey v. State, 55 S.W.3d 227, 232-33
(Tex.App.-Corpus Christi 2001, no pet.), discussed in Moore, 240 S.W.3d at 251 (noting
purported plea agreement in Dorsey was never filed with trial court and parties said at plea
hearing there was no agreement). The record also reflects that, at the time of appellant's
guilty plea, the court inquired whether appellant understood the documents he had signed
and the terms of the plea agreement. Appellant answered affirmatively in open court.

 At the May 2007 sentencing hearing, the court stated it had conversations with both
parties off the record concerning the "terms of the plea agreement that was filed" and noted
that the "agreement will be part of the court's record." The court went on to find appellant
had violated terms of his plea agreement. (7) In sentencing appellant to ten years of
confinement, the court stated it was "relying on paragraph 2 of page 2 [of the written
agreement] and that is I'm still within the parameters of the plea bargain based on his
signed terms of the plea bargain agreement. Originally the recommendation was for five
years. I am going to sentence him to ten years confinement TDC, finding him guilty of
evading arrest with a motor vehicle as an enhanced offense." 

 In its findings entered on our remand, the trial court found it "did not reject the plea
bargain agreement nor refuse to be bound by it under [article 26.13(2) of the Code of
Criminal Procedure]." By its finding, the court implicitly found it had accepted the plea
agreement. The records of both the 2004 plea hearing and the May 2007 sentencing
hearing support the court's implicit finding. 

 Appellant does not dispute that he knowingly and voluntarily agreed to the plea
agreement. The record shows the trial court reviewed the terms of the plea agreement,
discussed them in open court, and accepted the plea at the initial plea hearing held in
2004. A copy of the plea agreement was entered into evidence. The trial court again
indicated its acceptance of the plea agreement at the sentencing hearing. The court
accepted appellant's guilty plea, found him guilty, and sentenced him within the parameters
of the plea agreement. See Moore, 240 S.W.3d at 254, citing Dorsey, 55 S.W.3d at 232.

 We overrule appellant's first point of error.

Terms of Agreement

 By his second point of error, as an alternative argument appellant asserts the terms
of the plea agreement required the court to allow appellant the opportunity to withdraw his
plea. We disagree, and overrule the point.

 In its findings entered on remand, the trial court found it followed the terms of the
plea agreement in sentencing. We agree with the trial court's reading of the agreement.
As noted, the State informed the trial court appellant had not fulfilled his obligations under
the agreement and, under its express terms, his failure to do so caused "the agreement
as to disposition" in the case to be "voided and withdrawn, and [appellant to] be subject to
the full range of punishment." Under the language of the agreement, and on these facts,
the trial court opined appellant did not have the right to withdraw his guilty plea, and we
agree. See Moore, 240 S.W.3d at 253-54 (construing and finding plea agreement
enforcible). 


 Finding no error, we affirm the judgment of the trial court.


 James T. Campbell

 Justice




Do not publish.



Pirtle, J., concurring and dissenting. 

 



 

1. See Tex. Penal Code Ann. § 38.04(b)(2)(A) (Vernon 2001). This is a felony of the
third degree punishable by imprisonment for any term of not more than 10 years or less
than 2 years and a fine not to exceed $10,000. Tex. Penal Code Ann. § 12.34 (Vernon
2003). 
2. In return, the State recommended a five-year probated sentence. 
3. Paragraph 2 of the State's agreement with appellant states: 


 Should Jaime Trevino fail to fulfill his obligations under this Agreement, as
determined by the State, the State will inform the Court of such failure, the
agreement as to the disposition in this case will be voided and withdrawn,
and the said Jaime Trevino will be subject to the full range of punishment for
the offense of Evading Detention with a Vehicle-Enhanced. 
4. " 
 
" ' § ' 
 
5. " 
 
 " ' § 
6. ' 
 
 " 
---- "
7. 
 ' 


fit to cooperate with the officers. In short, appellant
had the ability to think and plan. See Gomes v. State, 9 S.W.3d 373, 377 (Tex.
App.-Houston [14th Dist.] 1999, pet. ref'd) (recognizing that while an appellant's limited
intelligence is a factor to consider when determining if a statement was truly voluntary, his
ability to reason or his possession of basic reasoning skills is also influential).

 Next, pursuant to appellant's request, various officers did twice interview appellant
after his arrest. Additionally, during their conversations the subjects of prosecution and
punishment were discussed. In the first interview, appellant asked what he was "looking
at." The officer responded that it depended on whether the store clerk died and that the
State may seek a life sentence instead of the death penalty. Appellant then asked if he
was given life imprisonment whether he could go ahead and ask for death to avoid the
delay and anguish incident to serving a life term. The officer replied that he did not believe
appellant would have a choice. Yet, these circumstances are of no import for the
discussion of the charges and punishment potentially facing an arrestee does not render
an ensuing confession involuntary, especially when the conversation is initiated by the
arrestee. United States v. Davis, 912 F. Supp. 245, 247-48 (S.D. Tex. 1995). Nor is a
statement improperly tainted by discussion about potential punishment if the suspect
decides to cooperate with the police. Id. 

 Yet, there is another representation uttered by an investigating officer about which
appellant complains. During the second interview, the officer said the following:

 . . . You being a hundred percent truthful with us will help you avoid possibly
getting the needle. I told you that last night. All right? Now it's up to you,
son. It really is. We can play it just like you played it out last night, and I
guarantee we'll get you convicted on two counts of capital murder, we will
get you the death penalty. All right? Now, if you cooperate with us one
hundred percent - - and I don't mean just a little bit, I mean one hundred
percent - - we'll talk to the judge and we'll talk to the D.A.'s office and can
almost - - but I'm not guaranteeing you anything, okay, because I can't
guarantee anything - - but I can almost assure you if you cooperate a
hundred percent the D.A.'s office will go along in asking for a life sentence
without the needle. And with a life sentence, you always have the possibility
of parole. Okay? 

This purportedly constituted an impermissible promise sufficient to induce one in the
position of appellant to fabricate testimony. We disagree given the several flaws in
appellant's analysis. First, as to the mere discussion about a life sentence versus the
death penalty, that does not constitute undue influence, as mentioned above. See United
States v. Davis, supra. 

 Second, to render a confession inadmissible because it was induced through a
promise or benefit, the promise must, among other things, be positive and unequivocal and
spoken or approved by one in authority. Muniz v. State, 851 S.W.2d 238, 254 (Tex. Crim.
App. 1993), cert. denied, 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993); accord
Henderson v. State, 962 S.W.2d 544, 564 (Tex. Crim. App. 1997), cert. denied, 525 U.S.
978, 119 S.Ct. 437, 142 L.Ed.2d 356 (1998). Here, the officer told appellant that he "can't
guarantee anything." In so conditioning his comments, he made his alleged promises less
than the positive and unequivocal ones required by case law. So too does the condition
implicitly illustrate that the officer lacked the authority to bind the State to any particular
agreement; again, he could not guarantee anything. 

 Third, the promise must also induce the confession or statement. Muniz v. State,
851 S.W.2d at 254. Here, when initially queried about the affect the officer's utterance had
on him, appellant did indicate that they influenced his decision to cooperate. Yet, later he
contradicted that utterance. For instance, he told the trial court that his decision to
cooperate, at least with regard to the search, was voluntary and free of influence from any
threat or promise of benefit or reward. Thus, while appellant may have said that the
comments influenced his decision to cooperate, he also said that they did not. Given these
circumstances, the trial court was not obligated to suppress the statements as the products
of an improper promise.

 Nor did the officer's allusion to appellant being eligible for parole after 20 or 30 years 
(if he cooperated and was given a life sentence) render the confessions subject to
suppression. It may well be that one convicted of a capital felony and assessed life instead
of death may not be eligible for parole until he has served 40 years in prison. See Tex.
Gov. Code Ann. §508.145(b) (Vernon Supp. 2003). And, it may well be that the officer was
wrong when he told appellant that the time period was only 20 or 30 years. Yet, deception
does not render a confession involuntary unless the deceit was calculated to produce a
truthful confession or was of a nature offensive to due process. Creager v. State, 952
S.W.2d 856. And, we do not believe that the representation about parole was of that ilk. 
Again, it was correct in part; appellant could be eligible for parole after the passage of a
certain period of time. And to the extent the officer was mistaken about the period of time
that had to be served, the time period mentioned was not so short as to mislead the
appellant into believing that he could escape punishment or be assessed only minimal
punishment. To someone 23 years of age, 20 to 30 years of sitting in prison may still be
viewed as a lifetime and little different than 40 years. The officer being mistaken by ten or
20 years is not enough for one to rationally infer that the deceit was calculated or of the ilk
contrary to due process. Instead, the trial court could have interpreted the officer's
comment as little more than an attempt to persuade appellant that some glimmer of
freedom is better than the death penalty and, such a belief may well be true.

 Also of import is the evidence that appellant was not only Mirandized when initially
arrested but also before each interview. Morever, each of the three statements he signed
also contained Miranda warnings and the representation that he was free to end the
interviews whenever he chose. Accompanying these written warnings were written
statements (which appellant also executed) illustrating that he waived the rights told him. 
Similarly, the consent form signed by appellant also contained a statement expressly
illustrating that his decision to permit the search was knowing and voluntary. 

 In sum, the totality of the circumstances provided the trial court with basis upon
which to clearly and convincingly hold that appellant's decision to grant the officers
permission to search his house was knowing and voluntary. The same is true of
appellant's decision to execute three separate written statements inculpating himself. And,
because they do, we cannot say that the trial court abused its discretion in refusing to grant
appellant's motions to suppress.

Issue Five - Admission of Videotaped Statements at Trial


 In his fifth issue, appellant contends that his videotaped statements were subject
to exclusion under article 38.22 of the Texas Code of Criminal Procedure. We overrule this
issue because appellant failed to show us and we failed to find where in the record art.
38.22 was urged as a basis for excluding the tapes. In short, the complaint was not
preserved. Tex. R. App. P. 33.1(a)(1)(A); Dooley v. State, 999 S.W.2d 796, 797-98 (Tex.
App.-Tyler 1998, pet. ref'd). 

 Issue Six - Admission of the Oral and Written Statements as Illegal Fruits

 In his final issue, appellant again argues that the trial court erred in overruling his
objections to the admission of the oral and written statements because they were the fruits
of the illegal search and seizure of his vehicle. That matter was addressed under issue
one. And, having previously found that the search of the vehicle was proper, we need not
again address the topic here. Thus, it is overruled. 

 Accordingly, the judgment of the trial court is affirmed.


 Brian Quinn

 Justice 


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code
Ann. §75.002(a)(1) (Vernon Supp. 2003). 
2. Appellant contests the admission of this evidence in four separate issues. 
3. Both women later died as a result of their gunshot wounds.
4. Although the apparatus on the back of the car did not play a role in Corporal Koth's initial decision
to stop the vehicle, he did notice the apparatus once the vehicle was stopped. 
5. Appellant does not argue that the Texas Constitution affords him any greater protection than the
Federal Constitution and he does not separately brief his claim that the search was in violation of article 38.23
of the Code of Criminal Procedure. Therefore, we will not separately address those matters. See Garcia v.
State, 919 S.W.2d 370, 388-89 (Tex. Crim. App. 1996) (holding that when error is founded upon a violation
of both the Texas and United States Constitutions, each claim must be separately briefed to avoid waiver).
6. We say "substantively" because one could possibly read issue six as involving the legitimacy of the
initial stop. Yet, aside from referring to the "initial stop" in general and asserting that the "illegal conduct of
the law enforcement agents continued from the initial stop up to and through the obtaining of the statements,"
appellant makes no effort to explain why he believes it may have been improper. Nor does he cite any
authority purporting to hold that it was improper. Given this dearth of briefing on the matter or compliance with
Texas Rule of Appellate Procedure 38.1(h), we conclude that any complaint about the legitimacy of the initial
stop was waived. Billy v. State, 77 S.W.3d 427, 429 (Tex. App.--Dallas 2002, pet. ref'd) (holding that the failure
to properly brief an issue results in its waiver).