The STATE of Texas

v.

Joshua Joel MOORE, Appellant.

No. PD–003–07.

Court of Criminal Appeals of Texas.

Nov. 21, 2007.

S. Price Smith, Jr., Wichita Falls, for Appellant.

Jeffrey L. Van Horn, State's Attorney, Austin, for State.

## *OPINION*

PRICE, J., delivered the opinion for a unanimous Court.

The appellant was indicted for the offense of manufacturing methamphet-

amine—four grams or more, but less than 200 grams. He pled guilty pursuant to a plea agreement with the State. The trial court sentenced the appellant to forty years' confinement. We granted the appellant's petition for discretionary review to determine whether the trial court accepted and followed an enforceable plea-bargain agreement, such that the appellant did not have the right to withdraw his guilty plea. We hold that the plea agreement was proper, and that the trial court committed no error in enforcing the plea.

## FACTS AND PROCEDURAL POSTURE

### Guilty Plea Proceedings

The appellant entered his guilty plea on March 14, 2006. The plea was predicated on a multi-faceted plea agreement with the State. The agreement required that Moore plead guilty to the charge. The State agreed to a six-week postponement of the sentencing so that the appellant could prepare for his term of incarceration. The appellant promised to appear for his sentencing and to refrain from committing any criminal offense during his six-week reprieve. On condition that the appellant abide by these terms, the State offered to recommend a punishment of twenty-five years. Should the appellant fail to abide by these terms, however, the agreement expressly provided that the State would not recommend a punishment; it would become an open plea for the trial court to determine the sentence based on the full punishment range, up to life in prison. After discussing the terms of the plea agreement in open court, the trial judge asked the appellant whether he still wished to enter a plea of guilty, to which the appellant responded in the affirmative.

The judge accepted appellant's guilty plea, as well as the terms of the plea agreement.

### Sentencing Proceedings

The sentencing hearing commenced on April 24, 2006. At that time, the State presented a presentence-investigation report alleging that the appellant had committed an assault, in violation of the plea agreement. In light of this accusation, the trial court postponed the sentencing hearing until May 8, 2006.

At the May 8th hearing, the State presented evidence that the appellant had, in fact, committed an assault during his six-week reprieve. Accordingly, the State informed the trial court that, pursuant to the plea agreement, the State would refrain from making any sentencing recommendation. Despite the appellant's request that the trial court assess the twenty-five-year sentence that the State had originally agreed to recommend, the trial court sentenced him to forty years' incarceration.

### On Appeal

In an unpublished opinion,[1] the court of appeals reversed the trial court's judgment, asserting that the trial court erred by not allowing the appellant the opportunity to withdraw his guilty plea. The court of appeals reasoned that the plea bargain between the State and the appellant contained two conditions precedent upon the plea agreement. "In other words, if [the appellant] did not satisfy the two conditions precedent, the State had no duty to perform its promise of recommending a twenty-five year sentence,"[2] and the appellant, in turn, had no duty to perform his promise to plead guilty. The court of appeals relied heavily on our opinion in *Perkins v. Court of Appeals for*

---

**1.** *Moore v. State,* No. 2–06–168–CR, 2007 WL 438897 (Tex.App.-Fort Worth, Feb.7, 2007).

**2.** *Id.,* 2007 WL 438897 at *1.

*Third Supreme Judicial Dist. of Tex.*[3] in its determination that there was not a proper plea bargain between the appellant and the State. The court of appeals ruled that, since the State withdrew its promise to recommend twenty-five years, the appellant should have the right to withdraw his guilty plea. That ruling was based on the following:

> Plea bargain agreements arise when a defendant agrees to plead guilty ... in exchange for a reduction in the charge, a promise of sentencing leniency, a promise of a recommendation from the prosecutor to the trial judge as to punishment, or some other concession by the prosecutor that he will not seek to have the trial judge invoke the full maximum implementation of the judge's conviction and sentencing authority.[4]

In its petition for discretionary review, the State argues that there was a bona fide plea agreement between the appellant and the State and that it was the appellant's breach of the terms of the plea agreement that released the State from its promise to recommend a twenty-five-year sentence. We granted the State's petition for discretionary review in order to determine whether the trial court accepted and followed an enforceable plea bargain agreement, such that the appellant did not have the right to be permitted to withdraw his guilty plea.[5] We agree with the State and hold that there was an enforceable plea agreement, which the trial court did not err in following.

## ANALYSIS

Plea agreements continue to be a vital part of our criminal-justice system. Like many aspects of criminal law, however, plea agreements have become more complex in recent years. Historically, plea agreements have involved the defendant pleading guilty in exchange for a lesser sentence. With as much as ninety percent of all criminal cases resolved via plea agreements,[6] charge reductions, dismissal of charges, or reduced sentences are commonplace. Plea agreements have also included the following provisions: an agreement that the State will dismiss charges against another party;[7] an agreement that the defendant will supply information to the police;[8] an agreement that the defendant will testify against someone else;[9] and even an agreement by the prosecutor to make a public announcement to protect the defendant's reputation.[10]

■ It is safe to conclude that plea agreements may contain a variety of stipulations and assurances, depending on the desires of the State and the defendant. In *Mabry v. Johnson,*[11] the United States Supreme Court noted that "plea agreements are consistent with the requirements of voluntariness and intelligence—because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less vol-

---

3. 738 S.W.2d 276 (Tex.Crim.App.1987).

4. *Moore, supra,* at *2–3, *citing Perkins, supra,* at 282.

5. *See* Tex.R.App. P. 66.3(c).

6. *Brady v. United State,* 397 U.S. 742, 752 n. 10, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

7. *Torrez v. State,* 925 S.W.2d 361 (Tex.App.-Fort Worth 1996, no pet.).

8. *Dorsey v. State,* 55 S.W.3d 227 (Tex.App.-Corpus Christi 2001, no pet.).

9. *Brunelle v. State,* 113 S.W.3d 788 (Tex.App.-Tyler 2003, no pet.).

10. *State v. Hall,* 104 Wash.2d 486, 706 P.2d 1074 (1985).

11. 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

untary than any other bargained-for exchange."[12] In fact, the terms of the plea agreement are left solely to "the parties who are dealing at arm's length. This Court will not interfere with those terms unless they appear to be manifestly unjust."[13]

■ Based, in part, on the aforementioned notions of voluntariness and intelligence, this Court has held that plea agreements are generally contractual arrangements between the State and defendant.[14] In *Ex parte Williams*, we held, "When a defendant agrees to the terms of a plea bargain agreement he is deemed to have entered into the agreement knowingly and voluntarily unless he shows otherwise. In effect, he becomes a party to a 'contract'."[15] Consistent with general contract principles, then, both the State and the defendant should be given great latitude in crafting plea agreements.[16]

■ Once a plea agreement is reached between the State and the defendant, the trial court must approve the terms of the agreement.[17] Thus, the contractual nature of a plea agreement does not become binding until the trial court accepts the proffered agreement. For example, in *Dorsey v. State*, the court of appeals rejected the State's assertion that a plea agreement existed. There, the

State and the defendant executed a document entitled "Agreement Memo," which contemplated a specific sentence recommendation by the State in exchange for the defendant's agreement to work diligently for the police and abide by other rules and conditions. However, this "Agreement Memo" was never filed with the trial court and, in fact, at the plea hearing the parties stated that there was no plea agreement. Thus, the trial judge never approved of any plea agreement. The court of appeals held that, since the trial court had not approved the "Agreement Memo," no proper plea agreement existed to bind either party.[18] Conversely, we declared the plea agreement binding in *Ex parte Williams* because the trial court announced that it would be bound by the agreement.[19]

■ Once a plea agreement is finalized and the trial court binds itself to the terms, both the defendant and the prosecutor are entitled to the benefit of the agreement. At the same time, both the defendant and the prosecutor are also bound to uphold their ends of the bargain. As this Court stated in *Ex parte Williams*, once the trial court declares that it will accept a plea agreement, "the State is bound to carry out its side of the bargain. Likewise, the defendant is bound to carry

12. *Id.* at 508, 104 S.Ct. 2543, *citing Corbitt v. New Jersey*, 439 U.S. 212, 219–20, 222–23, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978); *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *Blackledge v. Allison*, 431 U.S. 63, 71, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *Santobello v. New York*, 404 U.S. 257, 260–61, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

13. *Ex parte Williams*, 637 S.W.2d 943, 948 (Tex.Crim.App.1982).

14. *Ortiz v. State*, 933 S.W.2d 102 (Tex.Crim. App.1996); *Brunelle v. State, supra*, at 790.

15. *Ex parte Williams, supra*, at 947, *citing Jones v. Estelle*, 584 F.2d 687 (5th Cir.1978).

16. *See id.* at 948 (stating that we will not interfere with the terms of a plea agreement "unless they appear to be manifestly unjust").

17. *Dorsey v. State, supra*, at 232.

18. *Id.*

19. *Ex parte Williams, supra.*

out his side of the bargain."[20]  Ordinarily, when one side fails to abide by the plea agreement, two potential remedies exist. First, pertaining mainly to the defense, a plea may be withdrawn. Second, the non-breaching party may demand specific performance of the remainder of the plea agreement.[21]  The application of these remedies for breach of a plea agreement has been illustrated in multiple holdings.

■ The plea agreement in *Ex parte Williams,* perhaps most analogous to the facts before us today, contemplated that if Williams paid his fines before sentencing, the State would recommend probation. When Williams failed to pay the fines, even after a four-week extension was granted, the State declined to recommend probation.  The trial court proceeded to sentence Williams to ten years' imprisonment.[22]  The court of appeals ruled that the plea agreement between the State and Williams was proper and the trial court was correct in refusing to allow Williams to withdraw his guilty plea since Williams had not upheld his part of the agreement. Essentially, the plea agreement stated that if Williams did not pay the fines in time, the State would be relieved of its obligation to recommend probation, and instead, the trial court would sentence Williams to up to ten-years' incarceration. The trial court, *pursuant to the terms of the plea agreement,* handed down a ten-year sentence.

Similarly, in *Swanson v. State,*[23] the defendant signed a plea agreement in which the State agreed to dismiss the indictment in exchange for certain information pertaining to more culpable individuals.  As part of the plea agreement, if Swanson was able to provide some, but not all, of the requisite information, the State would recommend a seven-year prison sentence. When Swanson was unable to give adequate information, true to its promise, the State recommended a seven-year sentence, and the trial court sentenced Swanson accordingly.  The court of appeals ruled that since Swanson failed to perform his end of the bargain, the trial court did not err in sentencing him to prison.

In *Brunelle v. State,* the defendant was indicted for capital murder.  The State prosecuted him for the lesser offense of murder and offered a life sentence, which was accepted, in exchange for the defendant's agreement to testify against a co-defendant.  Three years later, when Brunelle refused to testify, the State essentially withdrew the plea agreement by re-indicting him for capital murder.  The court of appeals, in upholding the re-indictment, reasoned, "If specific performance is impossible, then the parties must be returned to the positions they occupied before the plea bargain."[24]  Thus, since the State could not force Brunelle to testify, and there was no provision in the plea agreement that contemplated a specific remedy if he chose not to testify, the State was permitted to withdraw from the plea agreement.  Here, by contrast, the agreement between the State and the appellant expressly contemplated what the remedy would be in the event the appellant should fail to satisfy part of the bargain.

The court of appeals in this case believed that the plea agreement between the State and the appellant simply consisted of the appellant agreeing to plead guilty

**20.**  *Id.* at 947.

**21.**  *Perkins v. Court of Appeals for Third Supreme Judicial Dist., supra,* at 283.

**22.**  *Ex parte Williams, supra,* at 944.

**23.**  692 S.W.2d 548 (Tex.App.-Houston [14th Dist.] 1985, no pet.).

**24.**  *Brunelle v. State, supra,* at 790.

in exchange for a sentencing recommendation of twenty-five years by the State. But the plea agreement in *Perkins,* which the court of appeals relied on, was much simpler than the one before us in this case. In *Perkins,* the plea agreement involved only the defendant's guilty plea in exchange for a sentencing recommendation of twenty-five years from the State. Thus, in our analysis, we gave a very general definition of a plea agreement, bearing in mind the simple plea agreement at issue. We stated, "We find that it is sufficient for our purposes to point out that [a plea agreement] is *usually* defined as ... a process ... whereby the accused agrees to plead guilty ... in exchange for ... a promise of a recommendation from the prosecutor to the trial judge as to punishment...." [25]

Extrapolating from this definition, the court of appeals in this case improperly reasoned that the agreement contained two conditions precedent: that the appellant appear—at the sentencing hearing in six weeks and refrain from committing a criminal offense during the interim. If the facts of this case were similar to those in *Papillion v. State,*[26] we might agree with the court of appeals's assessment. However, the record clearly shows that the six-week reprieve and the covenants to show up for the sentencing hearing and to refrain from committing a criminal offense were all part of the negotiation process and the finalized plea agreement. Moreover, the consequence of not abiding by

the two covenants was also pre-negotiated and expressly incorporated into the plea agreement. It was not the trial judge who imposed these requirements on the appellant; the appellant and the State mutually agreed to these terms. Since this plea agreement contained more than a simple guilty plea in exchange for a sentencing recommendation, the court of appeals should not have relied so heavily on *Perkins.*

The plea agreement in this case was far more complex and included an express agreement with respect to the remedy in the event of a partial breach. The record shows that it was the appellant, not the State, who benefitted from the six-week deferment of sentencing. It is only reasonable that the State should obtain something in return, namely, assurances by the appellant that he would appear for his sentencing hearing and that he would not commit a crime during the interim. Both of these assurances benefitted the State and were intelligently negotiated. In order to assure that the appellant would abide by these terms, the State and the appellant expressly agreed that if the appellant should fail to appear at the sentencing hearing or committed a criminal offense, then the State would be relieved of its duty to recommend a twenty-five-year sentence. It was not contemplated, however, that the appellant should then be relieved of his ultimate agreed-upon obligation to enter a guilty plea. Instead, the agreement itself provided for an appropri-

25. *Perkins v. Court of Appeals for Third Supreme Judicial Dist., supra,* at 282 (emphasis added).

26. 908 S.W.2d 621 (Tex.App.-Beaumont 1995, no pet.). The trial judge, after accepting the plea agreement and guilty plea, admonished the defendant and then told him that if he failed to have his presentence investigation completed or to show up at the sentencing hearing the trial judge would not be bound by

the plea agreement. When the defendant failed to adhere to one of the conditions, the judge assessed a jail sentence longer than that agreed to in the plea agreement. The court of appeals ruled that the trial judge improperly placed two conditions on the plea agreement that were "not part of any negotiations between the State or [the appellant]." *Id.* at 624.

ate remedy. The parties used the term "open plea" at the plea bargain hearing, essentially acknowledging that the guilty plea would become open as to sentencing implications.[27] Moreover, bearing in mind our holding in *Ex parte Williams*, we note that the trial court did not pressure the appellant into accepting the terms of the agreement; the agreement was left solely up to the appellant and the State.[28]

Consistent with the requirement of a voluntary and intelligent agreement elucidated in *Mabry*, each side obtained the advantages sought from the negotiating process.[29] The record reflects that the appellant knowingly and voluntarily agreed to the plea agreement. The record also clearly shows that the trial court expressly approved the agreement, accepted the appellant's guilty plea, and found him guilty, a requirement from our holding in *Dorsey*.[30] Part of the negotiated agreement included an express remedy in the event that the appellant should breach the agreement partially or totally. Therefore,

when the appellant breached that part of the plea agreement for which a remedy had been expressly agreed upon, the State was released from its obligation to recommend a twenty-five year sentence. Instead, pursuant to the agreement, the State was permitted to, and did, stay silent on the sentencing recommendation.

## CONCLUSION

We hold that the State's refusal to recommend a twenty-five year prison sentence comported with the terms of the enforceable plea agreement between the appellant and the State. Plea agreements are, in general, contractual arrangements between the defense and the State.[31] We should afford great latitude to the defense and the State in formulating a plea agreement that is acceptable to both parties. In this particular case, both parties agreed on the appropriate remedy in the event the appellant should breach the agreement.

27. That this remedy was specifically contemplated as a term of the plea bargain agreement is illustrated by the following colloquy from the plea proceeding:

> [The Prosecutor]: ... [I]f he is given that time and he does not return on the date ordered to appear back here for sentencing by the Court, then his plea is considered an open plea and the Court will then have the full punishment range available, up to life in prison.
>
> THE COURT: And that would also—does that also include if the defendant commits another—
>
> [The Prosecutor]: That's correct.
>
> THE COURT:—a criminal offense during that period of time?
>
> [The Prosecutor]: That's correct.
>
> THE COURT: The State then would not make a recommendation, but it would be an open plea?
>
> [The Prosecutor]: It would be an open plea, yes.
>
> THE COURT: Is that you-all's understanding of the plea bargain agreement?
>
> [Defense Counsel]: Yes.

> THE COURT: And, Mr. Moore, did you understand that to be the agreement?
>
> [The Appellant]: Yes.
>
> THE COURT: Do you have any questions about that?
>
> [The Appellant]: No.
>
> * * *
>
> THE COURT: The Court advises the defendant that the Court will approve the plea bargain agreement as stated on the record.... Do you still wish to enter a plea of guilty?
>
> [The Appellant]: Yes.
>
> THE COURT: All right. The Court accepts your plea of guilty.

28. *Ex parte Williams, supra,* at 948.

29. *Mabry v. Johnson, supra,* at 508, 104 S.Ct. 2543.

30. *Dorsey v. State, supra,* at 232.

31. *Ortiz v. Texas, supra; Brunelle v. State, supra,* at 790; *Ex parte Williams, supra,* at 947.

The court of appeals erred in determining that the plea agreement consisted solely of the appellant's guilty plea in exchange for a twenty-five year sentence recommendation from the State. Both parties should have been allowed to, and did, negotiate a personalized plea agreement so that each party was content with the terms of the agreement. Absent facts to the contrary, we hold that the terms of the plea agreement in this case, including the six-week deferment of sentencing, covenants to appear at the sentencing hearing and not commit a criminal offense during the six-week period, and the potential consequences for breaching either covenant, were knowingly and voluntarily agreed upon by the appellant and the State. There is no cause to set it aside. Accordingly, we reverse the judgment of the court of appeals and reinstate the trial court's judgment.