

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-06-125-CR

JONATHAN JAMES MOORE                                                      APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

## FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

------------

## OPINION

------------

## I.    Introduction

May a trial court impose a sentence in excess of a plea-bargained punishment without allowing the defendant to withdraw his plea of guilty when the defendant fails to return to court for sentencing after pleading guilty? Because the plea bargain negotiated between Appellant and the State in this case did not include an agreement to convert the plea to an open plea if

Appellant failed to appear for sentencing, we answer the question "no" and reverse and remand.

This case is strikingly similar to *State v. Moore*, in which the Court of Criminal Appeals reversed the judgment of this court and held that the trial court did not err by imposing a sentence in excess of a plea-bargained punishment when the defendant—Appellant's brother Joshua Moore—committed another crime between the day he pleaded guilty and the day he appeared for sentencing. 240 S.W.3d 248, 249 (Tex. Crim. App. 2007). However, a crucial difference between the two cases compels a different outcome in this case: In *State v. Moore*, the defendant and the State explicitly agreed that the trial court could set aside the bargained-for punishment; but there was no such agreement in this case.[1] *Id*.

## II. Factual and Procedural Background

Joshua Moore and Appellant Jonathan Moore are brothers. *Id.* The State indicted both of them for the same crime—manufacturing methamphetamine, four grams or more, but less than 200 grams. *Id.* They both negotiated plea

---

[1] Rather than submitting a brief countering Appellant's arguments, the State "in the interest of economy and clarity" requested this court to consider its original arguments in Joshua Moore's case as its arguments for Appellant's case. The State failed to address the crucial difference between these two cases.

agreements with the State; Joshua agreed to plead guilty in exchange for a recommended sentence of twenty-five years' confinement, and Appellant agreed to plead guilty in exchange for twenty-eight years. *Id.* They were both given time between the adjudication of guilt and sentencing so that they might tend to personal business before being incarcerated. *Id.* Joshua returned for sentencing on time but committed a crime during his reprieve. *Id.* Appellant failed to appear for sentencing. *Id.* Because of these transgressions, the trial court sentenced them both to forty years' incarceration. *Id.*

### A. Joshua Moore's Case

Joshua entered his guilty plea on March 14, 2006. *Id.* His plea was predicated on a multi-faceted plea agreement with the State. *Id.* The agreement required that Joshua plead guilty to the charge. *Id.* The State agreed to a six-week postponement of the sentencing so that Joshua could prepare for his term of incarceration. *Id.* Joshua promised to appear for his sentencing and to refrain from committing any criminal offense during his six-week reprieve. *Id.* On condition that Joshua abide by these terms, the State offered to recommend a punishment of twenty-five years' incarceration. *Id.* Should Joshua fail to abide by these terms, however, the agreement expressly provided that the State would not recommend a punishment; it would become an open plea for the trial court to determine the sentence based on the

3

full punishment range, up to life in prison. *Id.* The record from Joshua's plea hearing contains the following relevant colloquy:

[The Prosecutor]: [I]f [Joshua] is given that time and he does not return on the date ordered to appear back here for sentencing by the Court, then his plea is considered an open plea and the Court will then have the full punishment range available, up to life in prison.

THE COURT: And that would also -- does that also include if the defendant commits another --

[The Prosecutor]: That's correct.

THE COURT: - - a criminal offense during that period of time?

[The Prosecutor]: That's correct.

THE COURT: *The State then would not make a recommendation*, but it would be an open plea?

[The Prosecutor]: It would be an open plea, yes.

THE COURT: Is that you-all's understanding *of the plea bargain agreement*?

[Defense Counsel]: Yes.

THE COURT: And, Mr. Moore, did you understand *that to be the agreement*?

[Joshua]: Yes.

THE COURT: Do you have any questions about that?

[Joshua]: No.

. . . .

4

THE COURT: The Court advises the defendant that the Court *will approve the plea bargain agreement as stated on the record* . . . Do you still wish to enter a plea of guilty?

[Joshua]: Yes.

THE COURT: All right. The Court accepts your plea of guilty.

*Id.* [Emphasis added].

As can be seen from the transcript of Joshua's plea hearing, after discussing the terms of the plea agreement in open court, the trial court asked Joshua whether he still wished to enter a plea of guilty, to which Joshua responded in the affirmative. *Id.* The judge accepted Joshua's guilty plea, as well as the terms of the plea agreement. *Id.*

Joshua's sentencing hearing commenced on April 24, 2006. At that time, the State presented a presentence investigation report alleging that Joshua had committed an assault, in violation of the plea agreement. *Id.* In light of this accusation, the trial court postponed the sentencing hearing until May 8, 2006. *Id.*

At the May 8 hearing, the State presented evidence that Joshua had, in fact, committed an assault during his six-week reprieve. *Id.* Accordingly, the State informed the trial court that, pursuant to the plea agreement, the State would refrain from making any sentencing recommendation. *Id.* Despite Joshua's request that the trial court assess the twenty-five-year sentence that

the State had originally agreed to recommend, the trial court sentenced him to forty years' incarceration. *Id.*

In an unpublished opinion, this court reversed the trial court's judgment, holding that the trial court erred by not allowing Joshua the opportunity to withdraw his guilty plea. *Moore v. State*, No. 2-06-168-CR, 2007 WL 438897 (Tex. App.—Fort Worth, Feb. 7, 2007) (mem. op., not designated for publication), *rev'd,* 240 S.W.3d at 255. We reasoned that the plea bargain between the State and Joshua contained two conditions precedent and because the State withdrew its promise to recommend twenty-five years' incarceration, Joshua should have had the right to withdraw his guilty plea. *Moore*, 2007 WL 438897 at *1.

The Court of Criminal Appeals reversed this court's judgment. *Moore*, 240 S.W.3d at 255. The Court of Criminal Appeals, concerning Joshua's plea agreement, specifically explained:

> [T]he record clearly shows that the six-week reprieve and the covenants to show up for the sentencing hearing in six weeks and to refrain from committing a criminal offense were all part of the negotiation process and the finalized plea agreement. Moreover, the consequence of not abiding by the two covenants was also pre-negotiated and expressly incorporated into the plea agreement. *It was not the trial judge who imposed these requirements* on [Joshua]; [Joshua] and the State mutually agreed to these terms.
>
> *Id.* at 253 (emphasis added).

6

However, and significant to Appellant's case, the Court of Criminal Appeals stated in its opinion concerning Joshua's case that "[i]f the facts of this case were similar to those in *Papillion v. State*, we might agree with the court of appeals's assessment." *Moore*, 240 S.W.3d at 253 (citing *Papillion v. State*, 908 S.W.2d 621, 624 (Tex. App.—Beaumont 1995, no pet.)). In *Papillion*, the trial court, after accepting the plea agreement and guilty plea, admonished the defendant that if he failed to have his presentence investigation completed or to show up at the sentencing hearing, the trial court would not be bound by the plea agreement. *Papillion*, 908 S.W.2d at 624. When the defendant failed to adhere to one of the conditions, the judge assessed a jail sentence longer than that agreed to in the plea agreement. *Id.* The Beaumont court held that the trial court improperly placed two conditions on the plea agreement that were "not part of any negotiations between the State or [the appellant]," reversed the conviction, and remanded for a new trial. *Id.*

### B.    Appellant's Case

Appellant entered his guilty plea on January 4, 2006. The trial court held a hearing during which Appellant waived various rights and was admonished by the court. But unlike his brother's plea agreement, Appellant's agreement contained no provision for the State to withdraw its punishment

7

recommendation or for the court to exceed the recommendation. The record

from Appellant's plea hearing contains this relevant colloquy:

THE COURT: And is there a plea bargain agreement in the case?

[The Prosecutor]: Yes, sir.

[Appellant's attorney]: Yes, sir, Your Honor.

THE COURT: Do y'all want to state for the record what the plea bargain agreement is?

[The Prosecutor]: The plea agreement is for 28 years in prison, Your Honor, on the main case. I believe there's also a revocation pending in another case where we will agree to a one-year revocation on the state jail -- state jail sentence to run concurrently with this case.

. . . .

THE COURT: And from discussions prior to the hearing, sentencing is going to be on --

[The Prosecutor]: Well, let me say, Judge, that I don't make -- *I did not make that part of any plea agreement*. I told [Appellant's attorney] that he could speak to you about that and if you agreed to do that, that would be up to the Court, but that I would not make that any part of any plea agreement.

[Appellant's attorney]: That was my understanding.

THE COURT: And so if the Court allows [Appellant] to reappear, actually, on February 15th -- which is a Wednesday, a regular court day -- for sentencing and he fails to do so, there is no agreement with regard to that then?

[The Prosecutor]: Well, *there is no agreement with regard to a plea agreement* other than it's -- I think [Appellant's attorney] is aware of the Court's policy that if you allow that sentencing to occur later, that the

8

defendant must agree that it is an open plea if he does fail to appear at that time.

[Appellant's attorney]: That is my understanding, and that is what has been discussed with my client, Your Honor.

THE COURT: [Appellant], do you understand what that means?

[Appellant]: Yes, sir.

THE COURT: Okay. If you -- if, after we proceed today and there's a finding of guilt, and then I order you to reappear back on the 15th of February at 9:00 a.m., and you don't do that, what do you understand could be the greatest sentence you could receive then?

[Appellant]: Life or 99.

THE COURT: What?

[Appellant]: Life.

[Appellant's attorney]: Or 99.

THE COURT: Okay. Do you understand what an open plea is?

[Appellant]: Yes, sir.

THE COURT: That if you fail to appear, that the Court could then assess punishment -- could disregard the State's recommendation because, as I understand it, *the State would still recommend 28 years* under that, but the Court could assess punishment anywhere within the range of punishment, as much as life or 99 years and up to a $10,000 fine, all the way down -- actually, the Court could assess punishment all the way down to a first degree felony, all the way down to five years. The range of punishment for this offense is imprisonment in the Institutional Division for any term of not more than 99 years or less than five years, and, in addition, you could be assessed a fine not to exceed $10,000. So the Court could set it anywhere in that range of punishment. Any question about that?

9

[Appellant]: No, sir.

THE COURT: And when would you be ordered to appear back here?

[Appellant]: The 15th of February.

THE COURT: At what time?

[Appellant]: Nine o'clock.

THE COURT: Okay. Morning or evening?

[Appellant]: Morning. [Emphasis added.]

The trial court then continued to admonish Appellant asking him if he understood the sentencing range for the crime he was pleading guilty to, whether he had any objections, and whether he was pleading freely and voluntarily. Appellant answered that he understood and agreed with each of these questions. The court also asked Appellant's attorney if he believed his client was competent to enter the plea; Appellant's attorney said he did. The hearing concluded with this exchange:

THE COURT: The Court finds the [Appellant] competent. The Court will approve the plea bargain agreement as stated. The Court will also allow [Appellant] to report back for sentencing on February 15th at 9:00 a.m.

[Appellant's attorney]: Thank you, Your Honor.

THE COURT: The Court -- [Appellant], do you still wish to enter a plea of guilty?

[Appellant]: Yes, sir.

THE COURT: All right. The Court accepts your plea of guilty. The Court finds you guilty of the felony offense of manufacture of a controlled substance as charged in the indictment.

Appellant failed to appear for sentencing on February 15, 2006. Police arrested Appellant the next day, and the trial court held a sentencing hearing on February 27, 2006. Appellant offered an explanation of his failure to appear on the original sentencing date. Regarding Appellant's plea, the prosecutor argued that "the State considers this at this point to be an open plea." The trial court explained to Appellant that he could have had the twenty-eight year sentence if he had "taken [his] plea and finalized it [at the plea hearing]. You did not want to do so. You've had additional time to do whatever you wanted to do whenever you wanted to do during that period of time." The court assessed punishment at forty years' incarceration.

### III. Discussion

In two points, Appellant argues that the trial court erred by treating his plea as an open plea without giving him the opportunity to withdraw his plea of guilty and failed to substantially comply with Texas Code of Criminal Procedure article 26.13. The State counters with the argument it presented to this court in the case of Joshua Moore, namely, that Appellant was sentenced according to the terms of a plea bargain agreement that was accepted by the

11

trial court; therefore, Appellant did not have the right to withdraw his guilty plea. We agree with Appellant.

## A.    Plea Agreements

Plea agreements continue to be a vital part of our criminal-justice system. *Moore*, 240 S.W.3d at 250; *see Brady v. United States*, 397 U.S. 742, 752 n.10, 90 S. Ct. 1463, 1471 n.10 (1970). Like many aspects of criminal law, however, plea agreements have become more complex in recent years. *Moore*, 240 S.W.3d at 250. Plea agreements may contain a variety of stipulations and assurances, depending on the desires of the State and the defendant. *Id.* Plea agreements are generally contractual arrangements between the State and defendant. *Id.* As the Court of Criminal Appeals stated in *Ex parte Williams*, "When a defendant agrees to the terms of a plea bargain agreement he is deemed to have entered into the agreement knowingly and voluntarily unless he shows otherwise. In effect, he becomes a party to a 'contract.'" 637 S.W.2d 943, 948 (Tex. Crim. App.1982) (citing *Jones v. Estelle*, 584 F.2d 687, 690 (5th Cir.1978)). Consistent with general contract principles, then, both the State and the defendant should be given great latitude in crafting plea agreements. *Moore*, 240 S.W.3d at 250.

Once a plea agreement is reached between the State and the defendant, the trial court must approve the terms of the agreement. *Id.* (citing *Dorsey v.*

12

*State*, 55 S.W.3d 227, 229 (Tex. App.—Corpus Christi 2001, no pet.). Thus, the contractual nature of a plea agreement does not become binding until the trial court accepts the proffered agreement. *Moore*, 240 S.W.3d at 251.

When a plea agreement is finalized and the trial court binds itself to the terms, both the defendant and the prosecutor are entitled to the benefit of the agreement. *Id*. At the same time, both the defendant and the prosecutor are also bound to uphold their ends of the bargain. *Id.* As the Court of Criminal Appeals also stated in *Ex parte Williams*, once the trial court declares that it will accept a plea agreement, "the State is bound to carry out its side of the bargain. Likewise, the defendant is bound to carry out his side of the bargain." 637 S.W.2d at 947 (citation omitted). Ordinarily, when one side fails to abide by the plea agreement, two potential remedies exist. *Moore*, 240 S.W.3d at 252. First, pertaining mainly to the defense, a plea may be withdrawn. *Id.* Second, the non-breaching party may demand specific performance of the remainder of the plea agreement. *Id.* (citing *Perkins v. Court of Appeals for the Third Supreme Judicial Dist. of Tex.*, 738 S.W.2d 276, 283–284 (Tex. Crim. App.1987)).

A plea bargain is an agreement made between the prosecution and the defendant, and the trial court's sole role is to approve or reject the agreement. *See Ex parte Williams*, 637 S.W.2d at 947. It is not the trial court's function

13

to modify the terms of a plea agreement. *Papillion,* 908 S.W.2d at 624. A trial court exceeds its authority under article 26.13 of the Texas Code of Criminal Procedure when it inserts additional, non-negotiated terms into the negotiated plea bargain between the State and a defendant and then makes acceptance or rejection of the plea bargain contingent on whether or not a defendant complies with the additional, non-negotiated terms. *See id.; see also* TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon Supp. 2007).

**B.     Analysis**

In *State v. Moore*, Joshua and the State specifically agreed that the State would withdraw its punishment recommendation and the trial court would be free to impose any punishment within the statutory range if Joshua committed another crime before the sentencing hearing. 240 S.W.3d at 249. Thus, that agreement was part of the plea agreement negotiated between Joshua and the State and approved by the trial court, and the trial court did not err by enforcing the agreement. *Id.*

By contrast, in this case, Appellant and the State did *not* agree that Appellant's failure to appear for sentencing would convert his plea to an open plea and free the trial court to impose any sentence within the statutory range. As the prosecutor said at the plea hearing, "I did not make that part of the plea agreement. . . . [T]hat would be up to the Court, but . . . I would not make that

14

part of any plea agreement." The trial court specifically asked whether there was an agreement as to what would happen if Appellant failed to appear for sentencing, and the prosecutor answered, "[t]here is no agreement," and Appellant's attorney affirmed, "That is my understanding." The trial court acknowledged that conversion of Appellant's plea to an open plea was not part of the agreement between Appellant and the State with the words, "[A]s I understand it, the State would still recommend 28 years" if Appellant failed to appear for sentencing.

Thus, opening the range of punishment to its statutory maximum upon Appellant's failure to appear for sentencing was not part of the agreement negotiated between Appellant and the State. Instead, it was an additional, non-negotiated term imposed on the plea bargain by the trial court, and the trial court made its acceptance or rejection of the plea bargain contingent upon whether Appellant complied with the additional, non-negotiated term by timely appearing for sentencing. This the trial court cannot do. TEX. CODE CRIM. PROC. ANN. art. 26.13*; see Papillion*, 908 S.W.2d at 624.

The procedural facts of this case are remarkably similar to those in *Papillion*. In *Papillion*, ostensibly after accepting the plea agreement between the State and the defendant, the trial court interjected two terms into the agreement that had not been negotiated between the State and the defendant:

15

that the defendant complete a presentence investigation and return for sentencing at a later date. 908 S.W.2d at 622. After announcing these two terms the trial court asked the defendant if he was "still satisfied." *Id.* The defendant answered in the affirmative. *Id.* The trial court then explained to the defendant, "You can back out of all of this if you wanted to, but you still want to go forward?" *Id.* The defendant replied, "Yes, sir." *Id.* Like in *Papillion*, in this case, after the State had announced to the trial court the negotiated plea agreement that the State would recommend a twenty-eight year sentence, the trial court injected the term that Appellant could have a reprieve between adjudication and sentencing. *Id.* After explaining the open plea term to Appellant, the trial court inquired if Appellant understood and still wanted to plead guilty. Appellant answered in the affirmative.

In *Moore*, the Court of Criminal Appeals acknowledged that the outcome of that appeal might have been different if the facts had been more like those in *Papillion*. *Moore*, 240 S.W.3d at 253. The case before us is more like *Papillion*, and the crucial difference between *Moore* and this case compels a different outcome. Because Appellant and the State did not agree as a negotiated term of the plea bargain that the trial court could disregard the State's punishment recommendation if Appellant failed to appear for sentencing, the trial court erred by so doing without first giving Appellant the opportunity to withdraw his plea. *See Papillion*, 908 S.W.2d at 624.

We hold that the trial court erroneously injected itself into the plea negotiations between the State and Appellant and exceeded its authority under article 26.13 and that Appellant should have been afforded the opportunity to withdraw his plea of guilty.  We therefore sustain both of Appellant's points.

**IV.    Conclusion**

Having sustained both of Appellant's points, we reverse the trial court's judgment and remand the case for further proceedings.

ANNE GARDNER
JUSTICE

PANEL A:   CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

CAYCE, C.J. concurs without opinion.

PUBLISH

DELIVERED:  July 10, 2008

17