COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-06-125-CR

 

 

JONATHAN JAMES MOORE                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.      Introduction








May a trial court impose a
sentence in excess of a plea-bargained punishment without allowing the
defendant to withdraw his plea of guilty when the defendant fails to return to
court for sentencing after pleading guilty? 
Because the plea bargain negotiated between Appellant and the State in
this case did not include an agreement to convert the plea to an open plea if
Appellant failed to appear for sentencing, we answer the question Ano@ and reverse
and remand.  

 This case is strikingly similar to State v.
Moore, in which the Court of Criminal Appeals reversed the judgment of this
court and held that the trial court did not err by imposing a sentence in
excess of a plea-bargained punishment when the defendantCAppellant=s brother
Joshua MooreCcommitted
another crime between the day he pleaded guilty and the day he appeared for
sentencing.  240 S.W.3d 248, 249 (Tex.
Crim. App. 2007).  However, a crucial
difference between the two cases compels a different outcome in this case: In State
v. Moore, the defendant and the State explicitly agreed that the trial
court could set aside the bargained-for punishment; but there was no such
agreement in this case.[1]  Id. 

II.     Factual and Procedural Background








Joshua Moore and Appellant
Jonathan Moore are brothers.  Id.  The State indicted both of them for the same
crimeCmanufacturing methamphetamine, four grams or more, but less than 200
grams.  Id.  They both negotiated plea agreements with the
State; Joshua agreed to plead guilty in exchange for a recommended sentence of
twenty-five years=
confinement, and Appellant agreed to plead guilty in exchange for twenty-eight
years.  Id.  They were both given time between the
adjudication of guilt and sentencing so that they might tend to personal
business before being incarcerated.  Id.  Joshua returned for sentencing on time but
committed a crime during his reprieve.  Id.  Appellant failed to appear for
sentencing.  Id.  Because of these transgressions, the trial
court sentenced them both to forty years= incarceration.  Id. 

A.     Joshua Moore=s Case








Joshua entered his guilty
plea on March 14, 2006.  Id.  His plea was predicated on a multi‑faceted
plea agreement with the State.  Id.  The agreement required that Joshua plead
guilty to the charge.  Id.  The State agreed to a six‑week postponement
of the sentencing so that Joshua could prepare for his term of
incarceration.  Id.  Joshua promised to appear for his sentencing
and to refrain from committing any criminal offense during his six‑week
reprieve.  Id.  On condition that Joshua abide by these
terms, the State offered to recommend a punishment of twenty‑five years= incarceration.  Id.  Should Joshua fail to abide by these terms,
however, the agreement expressly provided that the State would not recommend a
punishment; it would become an open plea for the trial court to determine the
sentence based on the full punishment range, up to life in prison.  Id. 
The record from Joshua=s plea hearing contains the following relevant colloquy:

[The Prosecutor]: 
[I]f [Joshua] is given that time and he does not return on the date
ordered to appear back here for sentencing by the Court, then his plea is
considered an open plea and the Court will then have the full punishment range
available, up to life in prison.

 

THE COURT: 
And that would also -- does that also include if the defendant commits
another ‑-

 

[The Prosecutor]: 
That=s
correct.

 

THE COURT: - - a criminal offense during that period
of time?

 

[The Prosecutor]: 
That=s
correct.

 

THE COURT: 
The State then would not make a recommendation, but it would be
an open plea?

 

[The Prosecutor]: 
It would be an open plea, yes.

 

THE COURT: 
Is that you‑all=s understanding of the
plea bargain agreement?

 

[Defense Counsel]:  Yes. 

 

THE COURT: 
And, Mr. Moore, did you understand that to be the agreement?

 

[Joshua]: 
Yes. 

 

THE COURT: 
Do you have any questions about that?

 

[Joshua]: 
No.

 

. . . .         








THE COURT: 
The Court advises the defendant that the Court will approve the plea
bargain agreement as stated on the record . . . Do you still wish
to enter a plea of guilty?

 

[Joshua]: 
Yes.

 

THE COURT: 
All right. The Court accepts your plea of guilty.

 

Id. [Emphasis added].

 

As can be seen from the
transcript of Joshua=s plea
hearing, after discussing the terms of the plea agreement in open court, the
trial court asked Joshua whether he still wished to enter a plea of guilty, to
which Joshua responded in the affirmative. 
Id.  The judge accepted
Joshua=s guilty plea, as well as the terms of the plea agreement.  Id.

Joshua=s sentencing hearing commenced on April 24, 2006.  At that time, the State presented a
presentence investigation report alleging that Joshua had committed an assault,
in violation of the plea agreement.  Id.  In light of this accusation, the trial court
postponed the sentencing hearing until May 8, 2006.  Id.








At the May 8 hearing, the
State presented evidence that Joshua had, in fact, committed an assault during
his six‑week reprieve.  Id.  Accordingly, the State informed the trial
court that, pursuant to the plea agreement, the State would refrain from making
any sentencing recommendation.  Id.  Despite Joshua=s request that the trial court assess the twenty‑five‑year
sentence that the State had originally agreed to recommend, the trial court
sentenced him to forty years= incarceration.  Id.

In an unpublished opinion,
this court reversed the trial court=s judgment, holding that the trial court erred by not allowing Joshua
the opportunity to withdraw his guilty plea.  Moore v. State, No. 2‑06‑168‑CR,
2007 WL 438897 (Tex. App.CFort Worth,
Feb. 7, 2007) (mem. op., not designated for publication), rev=d, 240 S.W.3d at 255.  We reasoned that the plea bargain between the
State and Joshua contained two conditions precedent and because the State
withdrew its promise to recommend twenty‑five years= incarceration, Joshua should have had the right to withdraw his
guilty plea.  Moore, 2007 WL
438897 at *1.

The Court of Criminal Appeals
reversed this court=s
judgment.  Moore, 240 S.W.3d  at 255. 
The Court of Criminal Appeals, concerning Joshua=s plea agreement, specifically explained:

[T]he
record clearly shows that the six‑week reprieve and the covenants to show
up for the sentencing hearing in six weeks and to refrain from committing a
criminal offense were all part of the negotiation process and the finalized
plea agreement. Moreover, the consequence of not abiding by the two covenants
was also pre‑negotiated and expressly incorporated into the plea
agreement. It was not the trial judge who imposed these requirements on
[Joshua]; [Joshua] and the State mutually agreed to these terms. 

 

Id. at 253 (emphasis added).

 








However, and significant to
Appellant=s case, the
Court of Criminal Appeals stated in its opinion concerning Joshua=s case that A[i]f the
facts of this case were similar to those in Papillion v. State, we might
agree with the court of appeals=s assessment.@  Moore, 240 S.W.3d at 253 (citing
Papillion v. State, 908 S.W.2d 621, 624 (Tex. App.CBeaumont 1995, no pet.)).  In Papillion,
the trial court, after accepting the plea agreement and guilty plea, admonished
the defendant that if he failed to have his presentence investigation completed
or to show up at the sentencing hearing, the trial court would not be bound by
the plea agreement.  Papillion,
908 S.W.2d at 624.  When the defendant
failed to adhere to one of the conditions, the judge assessed a jail sentence
longer than that agreed to in the plea agreement.  Id. The Beaumont court held that the
trial court improperly placed two conditions on the plea agreement that were Anot part of any negotiations between the State or [the appellant],@ reversed the conviction, and remanded for a new trial.  Id. 


B.     Appellant=s Case








Appellant entered his guilty
plea on January 4, 2006.  The trial court
held a hearing during which Appellant waived various rights and was admonished
by the court.  But unlike his brother=s plea agreement, Appellant=s agreement contained no provision for the State to withdraw its
punishment recommendation or for the court to exceed the recommendation.  The record from Appellant=s plea hearing contains this relevant colloquy:      

THE COURT: 
And is there a plea bargain agreement in the case?

 

[The Prosecutor]: 
Yes, sir.

 

[Appellant=s
attorney]:   Yes, sir, Your Honor.

 

THE COURT: 
Do y=all
want to state for the record what the plea bargain agreement is?

 

[The Prosecutor]: 
The plea agreement is for 28 years in prison, Your Honor, on the main
case.  I believe there=s
also a revocation pending in another case where we will agree to a one‑year
revocation on the state jail ‑‑ state jail sentence to run
concurrently with this case.

 

. . . . 

 

THE COURT: 
And from discussions prior to the hearing, sentencing is going to be on ‑‑

 

[The Prosecutor]: Well, let me say, Judge, that I
don=t
make ‑‑ I did not make that part of any plea agreement.  I told [Appellant=s
attorney] that he could speak to you 
about that and if you agreed to do that, that would be up to the Court,
but that I would not make that any part of any plea agreement.

 

[Appellant=s attorney]:  That was my understanding.

 

THE COURT: 
And so if the Court allows [Appellant] to reappear, actually, on
February 15th ‑‑ which is a Wednesday, a regular court day ‑‑
for  sentencing and he fails to do so,
there is no agreement with regard to that then?

 








[The Prosecutor]: 
Well, there is no agreement with regard to a plea agreement other
than it=s ‑‑
I think [Appellant=s
attorney] is aware of the Court=s policy that if you allow
that sentencing to occur later, that the defendant must agree that it is an
open plea if he does fail to appear at that time.

 

[Appellant=s attorney]:  That is my understanding, and that is what
has been discussed with my client, Your Honor.

 

THE COURT: 
[Appellant], do you understand what that means?

 

[Appellant]: 
Yes, sir.

 

THE COURT: 
Okay.  If you ‑‑ if,
after we proceed today and there=s a finding of guilt, and
then I order you to reappear back on the 15th of February at 9:00 a.m., and you
don=t do
that, what do you understand could be the greatest sentence you could receive
then?

 

[Appellant]: 
Life or 99.

 

THE COURT:  What?

 

[Appellant]: 
Life.

 

[Appellant=s
attorney]:  Or 99.

 

THE COURT:  Okay.  Do you understand what an open plea is?

 

[Appellant]: 
Yes, sir.

 

THE COURT: 
That if you fail to appear, that the Court could then assess punishment ‑‑
could disregard the State=s
recommendation because, as I understand it, the State would still recommend
28 years under that, but the Court could assess punishment anywhere within
the range of punishment, as much as life or 99 years and up to a $10,000 fine,
all the way down ‑‑ actually, the Court could assess punishment all
the way down to a first degree felony, all the way down to five years.  The range of punishment for this offense is
imprisonment in the Institutional Division for any term of not more than 99
years or less than five years, and, in addition, you could be assessed a fine
not to exceed $10,000.  So the Court could
set it anywhere in that range of punishment. 
Any question about that?

 








[Appellant]: 
No, sir.

 

THE COURT: 
And when would you be ordered to appear back here?

 

[Appellant]: 
The 15th of February.

 

THE COURT: 
At what time?

 

[Appellant]: 
Nine o=clock.

 

THE COURT: 
Okay.  Morning or evening?

 

[Appellant]: 
Morning. [Emphasis added.]

 

The trial court then
continued to admonish Appellant asking him if he understood the sentencing
range for the crime he was pleading guilty to, whether he had any objections,
and whether he was pleading freely and voluntarily.  Appellant answered that he understood and
agreed with each of these questions.  The
court also asked Appellant=s attorney if he believed his client was competent to enter the plea;
Appellant=s attorney
said he did.  The hearing concluded with
this exchange: 

THE COURT: 
The Court finds the [Appellant] competent.  The Court will approve the plea bargain
agreement as stated.  The Court will also
allow [Appellant] to report back for sentencing on February 15th at 9:00 a.m.

 

[Appellant=s attorney]:  Thank you, Your Honor.

 

THE COURT: 
The Court ‑‑ [Appellant], do you still wish to enter a plea
of guilty?

 

[Appellant]: 
Yes, sir.








THE COURT: 
All right.  The Court accepts your
plea of guilty.  The Court finds you
guilty of the felony offense of manufacture of a controlled substance as
charged in the indictment. 

 

Appellant failed to appear
for sentencing on February 15, 2006. 
Police arrested Appellant the next day, and the trial court held a
sentencing hearing on February 27, 2006. 
Appellant offered an explanation of his failure to appear on the
original sentencing date.  Regarding
Appellant=s plea, the
prosecutor argued that Athe State
considers this at this point to be an open plea.@  The trial court explained to
Appellant that he could have had the twenty-eight year sentence if he had Ataken [his] plea and finalized it [at the plea hearing].  You did not want to do so.  You=ve had additional time to do whatever you wanted to do whenever you
wanted to do during that period of time.@  The court assessed punishment
at forty years=
incarceration. 

III.     Discussion








In two points, Appellant
argues that the trial court erred by treating his plea as an open plea without
giving him the opportunity to withdraw his plea of guilty and failed to
substantially comply with Texas Code of Criminal Procedure article 26.13.  The State counters with the argument it presented
to this court in the case of Joshua Moore, namely, that Appellant was sentenced
according to the terms of a plea bargain agreement that was accepted by the
trial court; therefore, Appellant did not have the right to withdraw his guilty
plea.  We agree with Appellant.

A.     Plea Agreements

Plea agreements continue to
be a vital part of our criminal‑justice system. Moore, 240
S.W.3d at 250; see Brady v. United States, 397 U.S. 742, 752 n.10, 90 S.
Ct. 1463, 1471 n.10 (1970).  Like many
aspects of criminal law, however, plea agreements have become more complex in
recent years.  Moore, 240
S.W.3d at 250.  Plea agreements
may contain a variety of stipulations and assurances, depending on the desires
of the State and the defendant.  Id.  Plea agreements are generally contractual
arrangements between the State and defendant. 
Id.  As the Court of
Criminal Appeals stated in Ex parte Williams, @When a defendant agrees to the terms of a plea bargain agreement he is
deemed to have entered into the agreement knowingly and voluntarily unless he
shows otherwise.  In effect, he becomes a
party to a >contract.=@  637 S.W.2d 943, 948
(Tex. Crim. App.1982) (citing Jones v. Estelle, 584 F.2d 687, 690 (5th
Cir.1978)).  Consistent with general
contract principles, then, both the State and the defendant should be given
great latitude in crafting plea agreements.  Moore, 240 S.W.3d at 250.








Once a plea agreement is
reached between the State and the defendant, the trial court must approve the
terms of the agreement.  Id.
(citing Dorsey v. State, 55 S.W.3d 227, 229 (Tex. App.CCorpus Christi 2001, no pet.). 
Thus, the contractual nature of a plea agreement does not become binding
until the trial court accepts the proffered agreement.  Moore, 240 S.W.3d at 251.  

When a plea agreement is
finalized and the trial court binds itself to the terms, both the defendant and
the prosecutor are entitled to the benefit of the agreement.  Id.  At the same time, both the defendant and the
prosecutor are also bound to uphold their ends of the bargain.  Id.  As the Court of Criminal Appeals also stated
in Ex parte Williams, once the trial court declares that it will accept
a plea agreement, Athe State is
bound to carry out its side of the bargain. 
Likewise, the defendant is bound to carry out his side of the bargain.@ 637 S.W.2d at 947 (citation omitted). 
Ordinarily, when one side fails to abide by the plea agreement, two
potential remedies exist.  Moore,
240 S.W.3d at 252.  First,
pertaining mainly to the defense, a plea may be withdrawn.  Id. 
Second, the non‑breaching party may demand specific
performance of the remainder of the plea agreement.  Id. 
(citing Perkins v. Court of Appeals for the Third Supreme Judicial
Dist. of Tex., 738 S.W.2d 276, 283B284 (Tex. Crim. App.1987)). 








A plea bargain is an
agreement made between the prosecution and the defendant, and the trial court=s sole role is to approve or reject the agreement. See Ex parte
Williams, 637 S.W.2d at 947.  It is
not the trial court=s function
to modify the terms of a plea agreement. 
Papillion, 908 S.W.2d at 624. 
A trial court exceeds its authority under article 26.13 of the Texas
Code of Criminal Procedure when it inserts additional, non‑negotiated
terms into the negotiated plea bargain between the State and a defendant and
then makes acceptance or rejection of the plea bargain contingent on whether or
not a defendant complies with the additional, non‑negotiated terms.  See id.; see also Tex. Code Crim. Proc. Ann. art. 26.13
(Vernon Supp. 2007).

B.     Analysis

In State v. Moore,
Joshua and the State specifically agreed that the State would withdraw its
punishment recommendation and the trial court would be free to impose any
punishment within the statutory range if Joshua committed another crime before
the sentencing hearing.  240 S.W.3d at
249.  Thus, that agreement was part of
the plea agreement negotiated between Joshua and the State and approved by the
trial court, and the trial court did not err by enforcing the agreement.  Id. 








By contrast, in this case,
Appellant and the State did not agree that Appellant=s failure to appear for sentencing would convert his plea to an open
plea and free the trial court to impose any sentence within the statutory
range.  As the prosecutor said at the
plea hearing, AI did not
make that part of the plea agreement. . . . [T]hat would be up to the Court,
but . . . I would not make that part of any plea agreement.@  The trial court specifically
asked whether there was an agreement as to what would happen if Appellant
failed to appear for sentencing, and the prosecutor answered, A[t]here is no agreement,@ and Appellant=s attorney
affirmed, AThat is my
understanding.@  The trial court acknowledged that conversion
of Appellant=s plea to an
open plea was not part of the agreement between Appellant and the State with
the words, A[A]s I
understand it, the State would still recommend 28 years@ if Appellant failed to appear for sentencing. 

Thus, opening the range of punishment
to its statutory maximum upon Appellant=s failure to appear for sentencing was not part of the agreement
negotiated between Appellant and the State. 
Instead, it was an additional, non-negotiated term imposed on the plea
bargain by the trial court, and the trial court made its acceptance or
rejection of the plea bargain contingent upon whether Appellant complied with
the additional, non-negotiated term by timely appearing for sentencing.  This the trial court cannot do.  Tex.
Code Crim. Proc. Ann. art. 26.13; see Papillion, 908 S.W.2d at
624.








The procedural facts of this
case are remarkably similar to those in Papillion.  In Papillion, ostensibly after
accepting the plea agreement between the State and the defendant, the trial
court interjected two terms into the agreement that had not been negotiated
between the State and the defendant: that the defendant complete a presentence
investigation and return for sentencing at a later date.  908 S.W.2d at 622.  After announcing these two terms the trial
court asked the defendant if he was Astill satisfied.@  Id. 
The defendant answered in the affirmative.  Id. 
The trial court then explained to the defendant, AYou can back out of all of this if you wanted to, but you still want
to go forward?@  Id. 
The defendant replied, AYes, sir.@  Id. 
Like in Papillion, in this case, after the State had
announced to the trial court the negotiated plea agreement that the State would
recommend a twenty-eight year sentence, the trial court injected the term that
Appellant could have a reprieve between adjudication and sentencing.  Id. 
After explaining the open plea term to Appellant, the trial court
inquired if Appellant understood and still wanted to plead guilty.  Appellant answered in the affirmative. 

In Moore, the Court of
Criminal Appeals acknowledged that the outcome of that appeal might have been
different if the facts had been more like those in Papillion.  Moore, 240 S.W.3d at 253.  The case before us is more like Papillion,
and the crucial difference between Moore and this case compels a
different outcome.  Because Appellant and
the State did not agree as a negotiated term of the plea bargain that the trial
court could disregard the State=s punishment recommendation if Appellant failed to appear for
sentencing, the trial court erred by so doing without first giving Appellant
the opportunity to withdraw his plea.  See
Papillion, 908 S.W.2d at 624.








We hold that the trial court
erroneously injected itself into the plea negotiations between the State and
Appellant and exceeded its authority under article 26.13 and that Appellant
should have been afforded the opportunity to withdraw his plea of guilty.  We therefore sustain both of Appellant=s points. 

IV.    Conclusion

Having sustained both of
Appellant=s points, we
reverse the trial court=s judgment
and remand the case for further proceedings.

 

 

ANNE GARDNER

JUSTICE

 

PANEL A:   CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

 

CAYCE,
C.J. concurs without opinion.

 

PUBLISH

 

DELIVERED:  July 10, 2008











[1]Rather
than submitting a brief countering Appellant=s arguments, the State Ain
the interest of economy and clarity@ requested this court to
consider its original arguments in Joshua Moore=s
case as its arguments for Appellant=s case.  The State failed to address the crucial
difference between these two cases.