

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| STATE OF TEXAS, | § | |
| | | No. 08-15-00205-CR |
| Appellant, | § | |
| | | Appeal from the 243rd |
| v. | § | |
| | | Judicial District Court |
| CRISPEN HANSON, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20120D03212) |
| | § | |

## **O P I N I O N**

If the State and a defendant enter into a plea agreement whereby the defendant waives the right to a suspended sentence, can the trial court after having approved the agreement, later suspend the sentence? The State raises that question in its appeal from the trial court's order sua sponte suspending the execution of Appellee Crispen Hanson's prison sentence and placing him on what is commonly referred to as "shock probation." [1] The State argues that the trial court abused its discretion in issuing the order because it violated the terms of the parties' plea agreement that the trial court had previously approved. Because we agree with the State that the plea agreement

---

[1] Although "probation" is now referred to in the Code of Criminal Procedure as "community supervision," in accordance with the Court of Criminal Appeals' convention, we use the terms interchangeably in our opinion. *See Shortt v. State*, 539 S.W.3d 321, 322 n.1 (Tex.Crim.App. 2018).

contained provisions in which Hanson knowingly and voluntarily waived his right to seek or permit the suspension of his sentence, or to be placed on shock probation, we reverse the trial court's order, and remand this matter to the trial court for further proceedings in accordance with our opinion.

## I. PROCEDURAL BACKGROUND

### A. The Plea Agreement

On July 13, 2012, Hanson was indicted on one count each of capital murder and murder in the death of his sixteen-month old son, Malachi Cosby, and two counts of the third-degree felony offense of injury to a child younger than six years old. On January 16, 2015, Hanson entered into a plea bargain agreement with the State of Texas. In the plea agreement, Hanson agreed to plead guilty to the two counts of injury to a child, and in exchange, the State agreed to recommend concurrent eight-year prison sentences for those two counts. And, as part of the agreement, the State would move to dismiss the capital murder and murder counts.

The plea papers contained the State's recommendation that Hanson be sentenced to "8 years confinement in the Texas Department of Criminal Justice Correctional Institutions Division with **no period of Community Supervision**." (emphasis original). That recommendation also contained the statement that when the State recommends incarceration, "it is understood by the Defendant that this recommendation . . . does NOT include any recommendation that this Defendant be granted community supervision after a period of incarceration under this Court's continuing jurisdiction . . . UNLESS specifically stated in the above State's recommendation to the Court." (emphasis original).

Hanson also signed an acknowledgment stating:

> After consulting with my attorney, I hereby knowingly and voluntarily waive the right, if any should exist, to file a petition of non-disclosure or to request dismissal

2

or suspension of further execution of sentence under any circumstances or for any reason without first obtaining the express written consent or approval of the attorney representing the State of Texas, and I further agree that no such non-disclosure or suspension shall be effective without the express written agreement of the attorney representing the State of Texas.

The trial court held a hearing on the plea agreement that same day. Hanson, who was represented by counsel, testified that he had read and understood the plea agreement. After determining that Hanson was competent to enter into the agreement, the trial court approved the agreement, accepted Hanson's guilty plea to the two counts of injury to a child, and agreed to the State's sentencing recommendation. That same day, as required by the plea agreement, the State contemporaneously filed a motion to dismiss the two murder counts, which the trial court granted. As well, the trial court entered a Judgment of Conviction dated January 16, 2015, convicting Hanson of two counts of injury to a child and sentencing him to concurrent eight-year prison terms. However, at Hanson's unopposed request, the trial court gave him until February 6, 2015 to surrender himself in order to get his affairs in order.

## B. The Additional Extensions of Hanson's Surrender Date

On February 6, 2015, Hanson filed an unopposed motion to further extend his surrender date, which the trial court granted that same day, giving Hanson until March 16, 2015 to surrender himself to begin the sentence. In his motion, Hanson stated that he needed additional time to get his affairs in order, and that he was also currently "undergoing medical screening and treatment[.]" On March 16, 2015, Hanson filed a second motion to extend his surrender date, stating that based on recent medical testing he had been "diagnosed with a rare and serious condition and require[d] immediate medical attention." Because the State opposed this motion, the trial court did not immediately rule on Hanson's request, and Hanson surrendered himself to the detention facility on March 16, 2015 as required by the trial court's prior order.

3

At the hearing on this second motion, Hanson's attorney informed the court that Hanson had been diagnosed with a genetic disorder known as Ehler-Danlos Syndrome.[2] He further advised the court that Hanson's two remaining children needed to be tested for the disorder and requested that Hanson be released from custody and given additional time to assist his children with the testing. Over the State's objection, the trial court granted the motion and issued an order releasing Hanson from custody. The trial court did not set a new surrender date and ordered Hanson's bond to remain in effect until such time as a new surrender was set.[3]

### C. The Shock Probation Order

On June 11, 2015, the trial court issued a motion entitled, "Court's Sua Sponte Motion to Hold a Hearing to Determine Whether to Suspend the Remainder of the Defendant's Prison Sentence and Place the Defendant on Community Supervision." In the motion, the trial court expressed its opinion that Hanson was eligible to be placed on community supervision pursuant to former Article 42.12, § 6 of the Texas Code of Criminal Procedure (authorizing the placement of a defendant on shock probation). The trial court set a hearing for June 15, 2015 so that the parties would have an "opportunity to be heard regarding this matter."

At the hearing, Hanson, his mother, and the original prosecutor on his case gave brief testimony. Hanson further described his medical condition, and his past compliance with court-imposed conditions. In addition, Hanson testified that further imprisonment would place an undue hardship on him and his family, in light of his medical condition, the need to assist his children

---

[2] At a subsequent hearing, Hanson described this disorder as being a "connective tissue syndrome that causes . . . vascular ruptures and organ ruptures."

[3] The State filed a Petition for a Writ of Mandamus with this Court, challenging the trial court's authority to release Hanson from custody, but we dismissed the Petition as moot after the trial court issued its subsequent order placing Hanson on shock probation. *See In re State*, No. 08-15-00161-CR, 2017 WL 3167482, at *2 (Tex.App.--El Paso July 26, 2017, no pet.) (not designated for publication).

4

with genetic testing, and the fact that he was financially responsible for supporting the two children and his parents.[4] The original prosecutor testified that the terms of the original plea bargain involved the State dismissing more serious capital murder charges in exchange for an eight-year prison sentence on the lesser charges.

Following the hearing, the trial court entered an order dated June 15, 2015 that suspended further imposition of Hanson's sentence, and placed him on community supervision. In its order, the trial court found that Hanson was eligible to be placed on community supervision, and that he "would no longer benefit from further incarceration." The trial court simultaneously entered a First Amended Judgment of Conviction, reflecting that it had "suspended" Hanson's sentence, and was placing him on community supervision for eight years. Thereafter, on June 25, 2015, the trial court entered an amended order suspending further execution of Hanson's sentence, in which the court added additional fact findings, from which the State now appeals.

## II. ISSUES ON APPEAL

The State contends that the trial court abused its discretion by suspending Hanson's sentence and placing him on "shock probation," arguing that by doing so, the trial court violated the terms of the plea agreement. Hanson had first responded that the State's appeal was untimely. We sustained that argument but were subsequently reversed by the Texas Court of Criminal Appeals. *State v. Hanson*, No. 08-15-00205-CR, 2017 WL 3167484, at *3 (Tex.App.--El Paso July 26, 2017), *rev'd*, 555 S.W.3d 578 (Tex.Crim.App. 2018). We are now tasked with resolving the merits of the appeal, including Hanson's remaining arguments.

---

[4] Hanson also presented the testimony of his mother who testified that she and Hanson's father lived with Hanson and relied on him for his support and assistance; she further testified that it would place an undue hardship on them, as well as on Hanson's children, if he were imprisoned.

Hanson offers two additional responses to the State's argument. First, Hanson argues that the State did not preserve this issue for our review, contending that the State failed to make a timely and specific objection to the trial court's decision, or alternatively, that the State's issue on appeal does not comport with the objection it made in the trial court. Second, Hanson also contends that the trial court did not abuse its discretion by placing him on shock probation, arguing that the plea agreement only prohibited Hanson from seeking such relief, but did not prohibit the trial court from sua sponte ordering it.

## III. CONTROLLING LAW

### A. The Binding Nature of Plea Agreements

Plea bargains are an integral part of the criminal justice system. *See Moore v. State*, 295 S.W.3d 329, 331 (Tex.Crim.App. 2009); *Brady v. United States,* 397 U.S. 742, 752 n.10 (1970). At its core, a plea bargain is a contract between the State and the defendant into which both parties have knowingly and voluntarily entered. *See Thomas v. State*, 516 S.W.3d 498, 501-02 (Tex.Crim.App. 2017), *citing Moore*, 295 S.W.3d at 331; *Ex parte Moussazadeh*, 64 S.W.3d 404, 411 (Tex.Crim.App. 2001). In exchange for relinquishing the right to trial, a defendant usually accepts a reduction in the charges or sentence. *See Thomas*, 516 S.W.3d at 502, *citing Perkins v. Third Court of Appeals*, 738 S.W.2d 276, 282 (Tex.Crim.App. 1987). In general, the terms of a plea agreement are left solely to the parties "who are dealing at arm's length," and therefore, a plea bargain agreement "may contain a variety of stipulations and assurances, depending on the desires of the State and the defendant." *State v. Moore*, 240 S.W.3d 248, 250 (Tex.Crim.App. 2007). And consistent with general contract principles, both the State and the defendant should be given great latitude in formulating a plea agreement that is acceptable to both parties. *Id*. at 251, 254.

The trial court's only role in the plea bargain process is to advise the parties whether or not it will accept the terms of the agreement. *See Moore*, 295 S.W.3d at 332; *see also Romero v. State*, No. 08-10-00357-CR, 2011 WL 664688, at *2 (Tex.App.--El Paso Feb. 23, 2011, no pet.) (mem. op., not designated for publication) (recognizing trial court's limited role in the plea bargaining process). The trial court is generally free to reject a particular plea bargain agreement. If it does so, however, the defendant is as a matter of right allowed to withdraw the guilty plea and the State may then withdraw its offer. *See Moore*, 295 S.W.3d at 332, *citing* TEX.CODE CRIM.PROC.ANN. art. 26.13(a)(2) ("Should the court reject any such agreement, the defendant shall be permitted to withdraw his plea of guilty or nolo contendere."). Therefore, neither the State nor the defendant are bound by a plea bargain until the trial court accepts the agreement. *See Ortiz v. State*, 933 S.W.2d 102, 106 (Tex.Crim.App. 1996) (recognizing that, unlike traditional contracts, a plea agreement between the State and a defendant is conditional, as it requires the trial court's approval).

However, because a plea agreement functions as a contract, once the trial court accepts the plea agreement, both the defendant and the prosecutor are bound to uphold their end of the agreement and are entitled to the benefit of their bargain. *See Moore*, 240 S.W.3d at 251; *see also Ex parte De Leon*, 400 S.W.3d 83, 89 (Tex.Crim.App. 2013). When one party violates the terms of the agreement, the "proper relief is either specific enforcement of the agreement or withdrawal of the plea, depending upon the requirements of the circumstances in each case." *In re C.F.P.*, 388 S.W.3d 326, 329 (Tex.App.--El Paso 2012, no pet.), *citing Ex parte Williams*, 637 S.W.2d 943, 947-48 (Tex.Crim.App. 1982) (en banc); *see also Moore*, 240 S.W.3d at 252. Thus, either the defendant or the State may be entitled to seek specific performance of the agreement in the event of a breach. *See Ex parte Cox*, 482 S.W.3d 112, 116 (Tex.Crim.App. 2016) (recognizing

the defendant's right to enforce the State's part of the plea bargain); *Escobedo v. State*, No. 08-12-00296-CR, 2014 WL 5797864, at *4 (Tex.App.--El Paso Oct. 17, 2014, pet. ref'd) (not designated for publication) (recognizing the State's right to demand specific performance of a plea bargain when the defendant fails to perform his part of the agreement).

Further, once a trial court approves a plea agreement, the court is "legally bound to carry out the terms of the agreement" and is "without any authority or power to do [anything] other than specifically enforce the agreement." *Perkins*, 738 S.W.2d at 280. Thus, a trial court has a "ministerial, mandatory, and non-discretionary duty" to enforce the plea bargain it approves. *Id.* at 284-285; *see also In re State*, No. 08-12-00165-CR, 2013 WL 634581, at *3 (Tex.App.--El Paso Feb. 20, 2013, no pet.) (not designated for publication); *In re Gooch*, 153 S.W.3d 690, 694 (Tex.App.--Tyler 2005, orig. proceeding) (mandamus relief granted when trial court violated mandatory duty to enforce plea bargain agreement). Accordingly, a trial court commits error if it attempts to unilaterally add an un-negotiated term to a plea bargain agreement, or if it attempts to otherwise alter the Agreement's terms. *See Moore*, 295 S.W.3d at 332; *see also Sherwood v. State*, 340 S.W.3d 929, 932 n.1 (Tex.App.--El Paso 2011, no pet.) (recognizing that a trial court may not "alter the terms" of a plea agreement by allowing the defendant to appeal certain matters when defendant expressly waived all rights to appeal as part of his agreement with the State).

### B. Shock Probation

Here, after the trial court signed the judgment of conviction based on the plea bargain, it suspended Hanson's sentence with "shock probation." We add a brief overview of shock probation as it existed at the time the trial court entered its order in June of 2015. *See Smith v. State*, 789 S.W.2d 590, 591 n.2 (Tex.Crim.App. 1990) (court must apply the Code in effect at the time defendant was placed on probation). At that time, former Article 42.12, § 6 of the Texas Code of

8

Criminal Procedure (hereinafter referred to as "Section 6") authorized a trial court to place a defendant on what is commonly referred to as "shock probation."[5]  *See In re State*, No. 08-15-00161-CR, 2017 WL 3167482, at \*2 (Tex.App.--El Paso July 26, 2017, no pet.); *see also State v. Robinson*, 498 S.W.3d 914, 919 (Tex.Crim.App. 2016) (discussing the requirements of shock probation under Section 6).  Specifically, Section 6 provided that on motion of one of the parties or on the trial court's own motion, a trial court could, within 180 days after a defendant began serving his sentence, suspend further execution of the sentence and place the defendant on community supervision if, in the court's opinion, "the defendant would not benefit from further imprisonment."  *See* former TEX.CODE CRIM.PROC.ANN. art. 42.12, § 6.  In addition, a defendant was only eligible to be placed on shock probation if he or she was "otherwise eligible for community supervision" and had never been in a penitentiary serving a felony sentence.[6]  In turn, Section 3 of former Article 42.12 premised eligibility on the defendant not being sentenced to a prison term exceeding ten years, and not being convicted of an offense listed in Article 42.12, § 3g(a) of the Code.  *See* former TEX.CODE CRIM.PROC.ANN. art. 42.12, § 3(a), (c), (g).

As the Court of Criminal Appeals has recognized, "community supervision" is statutorily the same whether it is granted as a part of the original judgment or is granted later, under Section 6. *See Shortt v. State*, 539 S.W.3d 321, 323 (Tex.Crim.App. 2018).  Therefore, the primary difference between the two forms of community supervision is the timing of when it is granted.  *Id.* at 324. Either way, community supervision is simply "the placement of a defendant by a court under a

---

[5] Effective January 1, 2017, the Texas Legislature repealed Article 42.12 of the Code, and enacted a new chapter, 42A, which is a non-substantive revision of the community supervision law.  *See* Act of May 26, 2015, 84th Leg., R.S., ch. 770, §§ 1.01, 3.01, 4.01-.02, 2015 Tex.Sess.Law Serv. 2320, 2320-64, 2394 (codified at TEX.CODE CRIM.PROC.ANN. ch. 42A).  The statutory authorization for "shock" community supervision in felony cases is presently found in Article 42A.202 of the Code of Criminal Procedure.  *See* TEX.CODE CRIM.PROC. art. 42A.202.

[6] The full text of former Article 42.12 of the Code may be found at the website for the Texas Legislature online at: https://statutes.capitol.texas.gov/StatutesByDate.aspx?code=CR&value=42.12&date=5/27/2015.

continuum of programs and sanctions, with conditions imposed by the court for a specified period during which . . . a sentence of imprisonment or confinement, imprisonment and fine, or confinement and fine, is probated and the imposition of sentence is suspended in whole or in part." *Id.* at 323-324, *citing* Former TEX.CODE CRIM.PROC. art. 42.12, § 2(2)(B).

## IV. DID THE STATE PRESERVE ERROR?

The State does not contest that Hanson was statutorily eligible for shock probation. Rather, it rests its argument on the terms of the plea agreement, which the State asserts deprived the trial court of the authority to grant shock probation. Hanson, however, contends that the State did not preserve this issue for our review.

### A. Applicable Law

To preserve error for appellate review, the complaining party must make a specific objection and obtain a ruling on the objection. *See Wilson v. State*, 71 S.W.3d 346, 349 (Tex.Crim.App. 2002). Texas Rule of Appellate Procedure 33.1 specifically requires that a party make their complaint known "by a timely request, objection, or motion" that states the grounds "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. . . . " TEX.R.APP.P. 33.1(a). In addition, the objection must be made at the earliest possible opportunity. *See Wilson v. State*, 71 S.W.3d at 349, *citing Turner v. State*, 805 S.W.2d 423, 431 (Tex.Crim.App. 1991) (en banc). As well, the issue on appeal must comport with the objection made at trial.[7] *Id., citing Thomas v. State*, 723 S.W.2d 696, 700 (Tex.Crim.App. 1986) (en banc).

---

[7] The Court of Criminal Appeals has held that when a trial court places a statutorily-ineligible defendant on probation, this constitutes an improper sentence and an appellate court may therefore consider the sentence for the first time on appeal given its "jurisdictional" nature. *See State v. Dunbar*, 297 S.W.3d 777, 781 (Tex.Crim.App. 2009). The parties do not address whether placing Hanson on shock probation in violation of the plea agreement raises analogous concerns.

10

**B. The Timing of the State's Objection**

Hanson contends that the State did not make a timely objection because it failed to object at the outset to the trial court's hearing. In other words, Hanson contends that the State was required to object to the trial court's authority to even hold such a hearing, and that by participating in the hearing without objection, the State waived its right to complain about the trial court's authority to place him on shock probation.

In support of his argument, Hanson relies primarily on *Janecka v. State*, 823 S.W.2d 232, 244 (Tex.Crim.App. 1992) (en banc) (opinion on reh'g). In *Janecka*, the court held that the State waived its right to object to the trial court's authority to appoint a special master to hold a hearing on a particular issue, when the State had failed to object to the appointment of the special master, and instead participated in the hearing without objection. The court held that the State could not complain about the appointment of the special master for the first time on appeal, noting that by failing to object, the trial court was never given the opportunity to correct its error. *Id.*

But unlike *Janecka*, the State here is not contending that the trial court lacked the authority to conduct the hearing. Rather, it is contending that the decision that the trial court made *after* it held the hearing was in error. Moreover, the State had no reason to object to the hearing, as at least one of the reasons for holding the hearing was to allow the parties the opportunity to discuss whether the trial court had the authority to make that decision. And that issue was in fact discussed at the hearing, as the trial court expressly asked the State to address the question of whether it had the "authority to suspend the imposition" of Hanson's sentence during the hearing. Therefore, we conclude that the State was not required to object to the trial court's decision to hold the hearing, and that it was instead entitled to object to the trial court's proposed entry of a shock probation order at the hearing itself.

### C. Adequacy of the State's Objection

Hanson also contends that the State's objections at the hearing do not comport with the arguments the State is raising on appeal and were therefore insufficient to preserve error. In particular, Hanson contends that at the hearing, the State focused on whether Hanson had waived his right to request a suspension of his sentence, while on appeal, the State argues that the trial court abused its discretion by sua sponte taking this action. According to Hanson, the State did not object on the basis of an abuse of discretion in the trial court, and therefore waived that issue. We disagree.

Although in general, a party is required to make an objection in the trial court that comports with his argument on appeal, the Court of Criminal Appeals has cautioned that appellate courts should not be "hyper-technical" when examining the record to determine whether error was preserved. *See Layton v. State*, 280 S.W.3d 235, 238-39 (Tex.Crim.App. 2009). Instead, the Court has held that "all the party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Everitt v. State*, 407 S.W.3d 259, 263 (Tex.Crim.App. 2013), *quoting Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim.App. 1992). The rationale for this approach mirrors the reason why a specific objection is required in the first place: to give the trial court the opportunity to avoid a potential error, and to give the opposing party an opportunity to respond to the objection. *See Thomas v. State*, 408 S.W.3d 877, 884-85 (Tex.Crim.App. 2013). Therefore, even if a party makes a "general or imprecise objection," if the nature of the objection was obvious to the judge and opposing counsel, the error is preserved for appellate review. *See Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Crim.App. 1977); *see also Thomas v. State*, 408 S.W.3d at 885, *citing State v. Rosseau*, 396 S.W.3d 550, 555 (Tex.Crim.App. 2013) ("Rather than focus on the presence of

magic language, a court should examine the record to determine whether the trial court understood the basis of a defendant's request.").

The State's objection first came up when in cross-examining Hanson, the prosecutor sought to introduce the plea agreement and examine Hanson on segments of it. Hanson's attorney objected on relevance grounds, and the prosecutor responded that the plea agreement was the "crux of the State's response" because "[t]here is waiver language in here, particularly to the section that the defense is relying on for the Court to convert the sentence to probation." Then this exchange took place:

> THE COURT: Before we address the waiver of the defendant, what about the Court's authority to suspend the imposition of that sentence? That is the crux, not what he agreed to or did not agree to.
>
> MR. ACOSTA: Part of that, Your Honor, is that the defendant recognized that any suspension of the sentence would be invalid without agreement upon the State.
>
> THE COURT: So this defendant invalidated the authority of the Court?
>
> MR. ACOSTA: He agreed to a waiver on that, Your Honor.
>
> THE COURT: Is that a yes or is that a no?
>
> MR. ACOSTA: He agreed to a waiver, Your Honor.
>
> THE COURT: You don't want to answer. [the plea agreement is] not admitted.[8]

The trial court understood that its authority to order shock probation was an issue, and the prosecutor, even if inartfully done, linked the waiver provision of the plea agreement to the trial court's authority to grant the relief that it did:

> THE COURT: Mr. Acosta, explain to me one more time what you believe is the relevancy of guilty plea papers and this defendant's perception of the law versus the Court's authority.
>
> MR. ACOSTA: Okay. Your Honor, under -- if you will -- if I may invite the Court's attention to page 10 of the plea papers that include the Court's findings, orders, and approval, which are the Court's findings, Your Honor, and your authority, your

---

[8] At the State's suggestion, the trial court took judicial notice of the plea agreement as contained in its court files.

13

finding that the defendant has waived his right to seek or permit the suspension of further execution of the sentence on behalf of and pursuant -- does not have the language -- to without the express agreement of the State.

The language that the prosecutor referenced in the trial court's findings states: "the Defendant has waived his right to seek or permit the suspension of further execution of sentence on his behalf pursuant to without the express agreement of the State." And the prosecutor articulated what is at the core of a plea bargained sentence:

> MR. ACOSTA: Your Honor, it's the crux of my argument, Your Honor, is that because he -- when he went through these documents, Your Honor, based on what the defendant told this Court, which is, I'm waiving my right to have this done, the Court entered these findings. And I believe that it is relevant, Your Honor, that he waived his right under 42.12, section 6, to seek further execution of that sentence and a conversion to probation. And based on what he proffered to this Court during his plea, this Court entered those findings and that was the expectation of this prosecutor when they entered into the plea, Your Honor.

Moreover, Hanson's attorney understood the State's argument, as he argued in response that nothing in the plea agreement removed the trial court's authority to place him on shock probation. The prosecutor also claimed that once the trial court entered its findings based on the waiver of a suspended sentence, Hanson "is without remedy."

To be sure, the State advanced some arguments below that it has not brought forward on appeal. For instance, it argued as a technical matter that any motion must have attached transcripts of record from the jail or prison that Hanson had first served time. But the State's objections below were sufficient to raise the issue of whether the express terms of the plea agreement prohibited Hanson from either seeking shock probation or permitting the trial court to grant him shock probation. And there was no doubt that the State expressly requested that the trial court decline to take that action. Accordingly, we conclude that the State adequately preserved this issue for our review, and we therefore address the merits of the State's argument below.

14

**IV. DID THE TRIAL COURT ERR BY ENTERING THE SHOCK PROBATION ORDER?**

On appeal, the State contends that the trial court was bound by the terms of the plea agreement, which prohibited Hanson from requesting, or the trial court from granting shock probation, without the express written consent of the State. We agree.

### A. Hanson Waived his Right to be Placed on Shock Probation

While the parties are bound by the terms of the plea agreement, they disagree on exactly what those terms include. The State contends that the agreement prohibited Hanson from both seeking shock probation and from permitting the trial court to enter a shock probation order without the express written consent of the State. Hanson, on the other hand, argues that the agreement only prohibited him from *seeking* a shock probation order, but did not prohibit him from *permitting* the trial court to sua sponte enter such an order. According to Hanson, the agreement was "silent" on whether the trial court could sua sponte place him on probation, and therefore does not waive his right to allow the trial court to take this action.

If the agreement was in fact silent on this issue, we would be inclined to agree with Hanson. *See, e.g.*, *State v. Weems*, No. 05-02-00239-CR, 2002 WL 1551904, (Tex.App.--Dallas July 16, 2002, no pet.) (not designated for publication) (where parties' plea agreement did not contain any provisions indicating that the defendant was waiving his right to either seek or receive shock probation, the defendant retained the right to move for shock probation and the State therefore could not conclude that the defendant violated the agreement by his motion); *see also Ex parte Williams*, 758 S.W.2d 785, 786 (Tex.Crim.App. 1988) (en banc) ("A party to an agreement has no contractual rights to demand specific performance over terms not appearing in the agreement or record.").

15

We disagree, however, on Hanson's characterization of the plea agreement's silence on this issue. In the agreement, Hanson expressly acknowledged that he was knowingly and voluntarily waiving his right to "make a motion for the suspension of further execution of sentence" under Section 6 of the Code for shock probation, "without first obtaining the express written consent or approval of the attorney representing the State of Texas." The acknowledgment went on to state that Hanson was "further agree[ing] that that no such . . . suspension shall be effective without the express written agreement of the attorney representing the State of Texas." Accordingly, Hanson agreed that *any* suspension--regardless of who moved for the suspension-- would not be effective absent the State's consent. Moreover, in the plea agreement, the trial court expressly found that Hanson had "waived his right to seek or permit the suspension of further execution of [his] sentence on his behalf . . . without the express agreement of the State."

These provisions are sufficiently specific to convince us that Hanson knowingly and voluntarily waived his right to either seek or receive a suspension of the execution of his sentence without the State's written consent. And in turn, because the trial court accepted the plea agreement with these provisions in it, the trial court was bound to enforce those provisions as written, and had no authority to otherwise alter or modify the terms of the agreement.

**B. The Trial Court's Order Deprived the State of the Benefit of its Bargain**

And finally, although Hanson's argument on this point is not fully developed, we briefly address his suggestion that the trial court's action did not in fact alter the terms of the plea agreement. This argument centers on Hanson's belief that the trial court's entry of the shock probation order did not modify Hanson's sentence, and that consequently, the State received the benefit of its bargain, i.e., the recommended eight-year prison sentence. In support of this argument, Hanson cites *Speth v. State*, 6 S.W.3d 530 (Tex.Crim.App. 1999) (en banc). In *Speth*,

16

the defendant complained for the first time on appeal that the trial court had imposed conditions on his probation that were not statutorily authorized and were therefore void. *Id.* at 531. The court of appeals held that the defendant could raise the objection for the first time on appeal, relying on a line of cases holding that where a punishment or sentence is not authorized by statute, it is therefore void and may be challenged for the first time on appeal. *Id*. at 531-32. The Texas Court of Criminal Appeals, however, held that those cases were inapposite because they involved the "imposition of a sentence not authorized by statute, while community supervision is not a sentence or even part of a sentence." *Id.* at 532. The court held that instead, a sentence and the conditions of community supervision are each separate parts of the judgment, and therefore, a defendant seeking to challenge the conditions of community supervision must object to those conditions in the first instance in the trial court. *Id.* at 534-35.

The Texas Court of Criminal Appeals, however, has since clarified that while the "conditions" of probation may not render a sentence "illegal," the fact that a defendant was wrongfully placed on either regular or shock probation can in fact render a sentence illegal, thereby allowing the State to challenge the granting of probation for the first time on appeal. [9] *See, e.g.*, *Burg v. State*, 592 S.W.3d 444, 451 (Tex.Crim.App. 2020) (recognizing that a sentence may be rendered illegal based on the "fact of shock or regular probation."), *citing State v. Dunbar*, 297 S.W.3d at 781; *see also Shortt v. State*, 539 S.W.3d at 325-326 n.4 (recognizing that "probation, substantively, is a type of punishment."). More importantly, the Court has expressly held that an order granting "shock probation" substantively modifies a defendant's judgment of conviction.

---

[9] In addition, the Court has also recognized that when a defendant complains about a condition of probation that "violates an absolute prohibition as envisioned by *Marin*," or in other words, a condition that the "criminal justice system simply finds intolerable" or is by definition an option not available to the trial court, the defendant may challenge that condition for the first time on appeal. *See Gutierrez v. State*, 380 S.W.3d 167, 175-76 (Tex.Crim.App. 2012).

17

*See Robinson*, 498 S.W.3d at 919 (holding that the State may appeal an order that "modifies a judgment by imposing shock probation."); *see also State v. Hanson*, 555 S.W.3d 578, 580 (Tex.Crim.App. 2018) (reaffirming that an order granting shock probation "modifies a judgment" under Article 44.01 of the Code of Criminal Procedure). Therefore, the trial court's order placing Hanson on shock probation did in fact modify or alter its earlier judgment sentencing him to an eight-year prison term. And because the plea agreement contemplated that Hanson was waiving his right to receive any such a modification, without the State's written consent, the trial court's order placing Hanson on shock probation did in fact deprive the State of the benefit of its bargain.

Accordingly, for the reasons set forth above, we conclude that the trial court abused its discretion when it issued its order suspending Hanson's sentence and placing him on shock probation without the State's consent. The State's sole issue on appeal is sustained.

## V. Conclusion

We reverse the trial court's amended order suspending the further execution of Hanson's sentence and placing him on shock probation and remand this matter for further proceedings in accordance with our opinion.[10]

JEFF ALLEY, Chief Justice

March 27, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

---

[10] From our record, it appears that Hanson spent some time in jail between the date of his initial judgment of conviction, and the date of the order appealed from. The trial court on remand would have to determine the appropriate credits for time served from that, or any other reason. *See, e.g.*, *Ex parte Rowe*, 277 S.W.3d 18, 19-20 (Tex.Crim.App. 2009) ("As we have held in previous unpublished opinions, if a person is erroneously released from custody, through no fault of his own, and is then brought back into custody, he is entitled to credit for all of the time spent on that erroneous release."); *but see Ex parte Alvarez*, 570 S.W.3d 442, 447 (Tex.App.--Austin 2019, pet ref'd) (distinguishing *Rowe* and like decisions). We express no opinion on what credit, if any, might apply.